Raul Borrego FLORES, Appellant,

v.

The STATE of Texas, Appellee.

No. 100–85.

Court of Criminal Appeals of Texas, En Banc.

Sept. 17, 1986.

Douglas Gelo, El Paso, for appellant.

Luther Jones, Co. Atty. and Todd Chenoweth, Asst. Co. Atty., El Paso, Robert Huttash, State's Atty. and Alfred Walker, First Asst., State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was convicted of carrying a prohibited weapon, a switchblade knife, and sentenced to 100 days' confinement in the El Paso County Jail and a $200 fine, probated.

The El Paso Court of Appeals, in an unpublished opinion, reversed appellant's conviction holding that "the mere capability of prohibited operation by the broken weapon without proof that the knife is used in the prohibited fashion is not sufficient evidence to satisfy the switchblade definition." *Flores v. State,* No. 08–84–00198–CR (delivered November 21, 1984). We granted the State's petition for discretionary review to determine whether the evidence presented was sufficient to show the weapon in the instant case constituted a switchblade knife under V.T.C.A., Penal Code § 46.01(11).

The record reflects that the switchblade knife was already broken at the time it was seized. As a result of the defect the blade could be folded into the handle, but it would not lock into place. Since the blade would not lock into place it could not be sprung into an open position by exerting pressure on the release button. However, when seized the knife had a thick rubber band wrapped around the handle. The State contended at trial that the rubber band served as a pressure release device and when used "correctly" produced the same prohibited operation as that of a fully functional switchblade knife. Officer Rodney Hudson explained that the rubber band could be placed around the handle and over the manually retracted blade. Then, by applying rearward pressure on the rubber band, the rubber band could be slipped off of the point of the blade, permitting the ejection spring to trip the blade into the open position. Officer Hudson also explained that the same effect could be produced by utilizing the C-clip on the handle. The C-clip could be rotated up to cover the tip of the blade. When pressed back the C-clip would release the blade, which would spring into the open position.

While recognizing that these two minor adjustments already present on the knife could produce the prohibited effect, the Court of Appeals nevertheless found the evidence insufficient to show that the knife seized was a "switchblade" under Texas law.

V.T.C.A., Penal Code § 46.01(11) reads:

(11) 'Switchblade knife' means *any* knife that has a blade that folds, closes, or retracts into the handle or sheath, and that:

(A) opens automatically by pressure applied to a button *or other device located on the handle* ; or

(B) opens or releases a blade from the handle or sheath by force of gravity or

by application of centrifugal force. (Emphasis added)

The knife seized in the instant case, even in its defective state, is a "switchblade knife" as such is defined at V.T.C.A., Penal Code Sec. 46.01. The evidence shows that two devices found on the handle of the knife, when depressed, caused the knife to open automatically. The Court of Appeals seems to require the State to prove that the knife was actually operated in the prohibited fashion, even though this is clearly not a statutory requirement.

*Smith v. State*, 96 S.W. 1086 (Tex.Cr. App.1906), was a prosecution for carrying a pistol. This Court held that, in the absence of proof that it was broken in such a manner that it could not be fired, the fact that the pistol was broken was no defense. In the instant case there is no evidence to show that the knife was broken in such a manner that it could not be operated as a switchblade knife. Indeed, the State adequately proved that the opposite was true, the knife was capable of being operated as a switchblade.

After viewing all the evidence in the light most favorable to the verdict we hold that a rational trier of fact could have found that the knife was a "switchblade" as defined by State statute and that appellant was guilty of possessing a prohibited weapon beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1974).

Accordingly, the judgment of the Court of Appeals is reversed and appellant's conviction is affirmed.

TEAGUE, Judge, dissenting.

Today, the author of the majority opinion performs a feat never before performed by mortal man, not even John Wayne; it makes automatic that which is manual, converting a manually operated object into an automatically operated one, by no less than a rubber band. I dissent to the majority's holding that the evidence in this cause is sufficient to support the jury's verdict that the appellant is guilty beyond a reasonable doubt of possessing a switchblade knife.

Specifically, I would find that the evidence is insufficient to support the jury's finding that the knife in appellant's possession is a "switchblade knife" as defined in V.T.C.A., Penal Code § 46.01(11), the possession of which is proscribed by V.T.C.A., Penal Code, § 46.06(a)(5).

As is apparent from its line of reasoning, the majority opinion relies only on that portion of the definition of a "switchblade knife" that is set out in subpart (A) of the statute, which reads as follows:

(11) 'Switchblade knife' means *any* knife that has a blade that folds, closes, or retracts into the handle or sheath, *and that* :

(A) opens automatically by pressure applied to a button or other device located on the handle; ... (My emphasis.)

In terms of grammatical construction, the statutory definition of "switchblade knife" is a complex sentence. Subpart (A) and the relative pronoun "that", which introduces the subpart, constitute a subordinate adjective clause modifying the predicate noun "knife" in the main clause. The subject of the subordinate clause is "that" and the word "opens" is its verb. The word "automatically" is an adverb of manner modifying "opens". The phrase "by pressure" is a prepositional phrase acting as an adverbial phrase of manner and also modifies the verb "opens". The word "applied" is an ellipsis for the adjective clause "that is applied" and modifies "pressure". The nouns "a button" and "other device", which are connected by the coordinate conjunction "or", are both objects of the preposition "to" and their relation is one of alternation or choice. Both objects are modified by the adjective clause "[which is] located on the handle". The entire clause "[that is] applied to a button or other device [which is] located on the handle" has a dual or overlapping adverbial and adjectival relation. The clause in its entirety, as an adverb, modifies "opens"—it describes how the knife is opened. That portion of the clause beginning with "[that is] applied", as an adjective, modifies "pressure"—it

tells what kind of pressure is required under the statute.

It is thus diagrammatically evident that, in order to constitute a "switchblade knife" under subpart (A), the knife must be one that *opens automatically* by the application of pressure to some device located on the handle, a button being one such possible device. The common meaning of "automatically", and a definition given the term by Webster, is "mechanically".[1]

It is therefore clear to me that the statute prohibiting possession of a switchblade knife was intended to apply only to those knives which are capable of operation by some automatic pressure-release mechanism.

Any knife the operation of which may be accomplished solely by means of *manual retraction of the blade* would thus not qualify as a "switchblade knife" under the statute, unless such retraction could be accomplished by the means set out in subpart (B) of the statute, e.g., by flicking the knife in an outward or downward motion so as to release the blade by centrifugal or gravitational force. Clearly, the knife at issue in this cause was not capable of the type of operation described in subpart (B) since the automatic release mechanism of the knife was broken and the blade of necessity had to be secured in position by means of a rubber band bound around its handle. Furthermore, there is no evidence in the record that the knife was capable of such operation.

The record indicates, as the opinion by the court of appeals pointed out, that the knife was broken such that it would no longer lock into position *by means of any automatic pressure mechanism;* i.e., the spring ejection was apparently nonfunctional, or at least dysfunctional. In fact, when discovered, the knife was in an extended position, much like the permanent position of a table or steak knife, and its closure into the handle had perforce to be secured by a rubber band, indicating that the spring ejection had gone flaccid, so to speak. Clearly, the knife was impotent insofar as its spring ejection is concerned, relegating it in stature to that of the common table or steak knife, neither of which are covered by the statute under consideration, but may now be by virtue of the majority opinion's holding. Retractability of the blade will not suffice, in and of itself, to qualify a knife as a "switchblade knife" under the statute. Either subpart (A) or (B) must also be established by competent and sufficient evidence, which is not present in this cause.

In the face of sound rules of grammar, the express terms of the statute, and just plain common sense, the majority opinion nevertheless concludes that the evidence is sufficient to sustain a finding that the knife in question was a "switchblade knife". I find that its conclusion rests upon several fallacious statements made in support of its holding. The first one is that "In the instant case there is no evidence to show that the knife was broken in such a manner that it could not be operated as a switchblade knife." The next one is that "The evidence shows that two devices found on the handle of the knife, when depressed, caused the knife to open automatically." Its analogy to a broken pistol, to support its conclusion, is so deficient in meaning that it is almost laughable, especially considering the fact that the defendant in *Smith v. State*, 96 S.W. 1086 (Tex. Cr.App.1906), upon which it relies for authority, was not charged and convicted of *possessing an automatic pistol.*

Justice Ward, in the unpublished opinion that he authored for the El Paso Court of Appeals in this cause correctly pointed out that the blade on the knife would not automatically lock back into the handle, as orig-

---

1. Webster's Dictionary defines the word "automatic" as follows: "mechanical ... having a self-acting or self-regulating mechanism." Webster's New Collegiate Dictionary 76 (1976). The word "manual" is defined as follows: "worked or done by hand and not by machine." Id. at

701. The definition of the term "switchblade", which comports with our own statutory definition, is as follows: "a pocketknife having the blade spring-operated so that pressure on a release catch causes it to fly open." Id. at 1179.

inally designed or manufactured, because it had been broken. This defect prevented normal operation in that the pressure exerted against the release button will no longer cause the blade to spring into an open position.

The State, however, erroneously argues, and the majority opinion erroneously buys the argument, that the knife was "fixed" and made "just like new" by a minor alteration, the placement of a rubber band, which resulted in the miraculous transformation of returning the broken and decapacitated knife to its original automatic state. Such a suggestion is preposterous. The State also offers the amazing analogy that a broken and defective machine gun which will no longer fire automatically can become an automatic machine gun once again through the placement of a rubber band (a large one, I suppose?) or even chewing gum. I would postulate that such chewing gum would be required by law to be packaged with a warning, if not to all consumers, then at least to denture-wearers.

Much like a scoutmaster might instruct a young boy scout attempting to earn a merit badge in the operation of a switchblade knife and might explain how a defect such as the knife in this cause had would prevent it from being a switchblade knife, Justice Ward painstakingly pointed out: "Since the blade will not automatically lock back into the handle, against the ejection spring, pressure on the release button will not produce the automatic opening required by the statute." Justice Ward was careful to point out in his opinion for the Court that because there was no evidence in the record of actual conversion of the knife's operation from manual back to automatic by use of the rubber band, no inference that the non-automatic weapon could in fact be converted into an automatic weapon by the use of a rubber band could be drawn from Hodson's testimony. Justice Ward therefore correctly concluded: "The mere capability of prohibited operation by this broken weapon without proof that the knife is used in the prohibited fashion is not sufficient evidence to satisfy the switchblade definition." Before concluding

his opinion, Justice Ward used this excellent example to make his point: "One might analogize this situation to possession of a machine gun [an automatic weapon that fires rapidly and repeatedly when the trigger is pressed, for those who were in the service but missed that training exercise] no longer capable of firing more than two shots automatically without manual reloading and with only a single function of the trigger."

The knife in this case was not at the time in question a "switchblade knife". Justice Ward and the other members of the El Paso Court of Appeals correctly held that the knife in question is not a "switchblade knife". To the majority's contrary holding, I respectfully dissent.