TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00259-CR







Bernard Rene Vargas, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BEXAR COUNTY, 187TH JUDICIAL DISTRICT


NO. 98-CR-4324, HONORABLE RAYMOND ANGELINI, JUDGE PRESIDING








 This appeal is taken from a conviction for an ex-felon in possession of a firearm
away from the premises where he lived. See Tex. Penal Code Ann. § 46.04 (West 1994). In
addition to the prior felony offense of aggravated assault with a deadly weapon alleged as part of
the primary offense, the indictment alleged two other felony convictions for the enhancement of
punishment. See Tex. Penal Code Ann. § 12.42(d) (West Supp. 2000). The jury found appellant
Bernard Rene Vargas guilty and the enhancement allegations true. The jury assessed punishment
at twenty-seven years' imprisonment. 


POINTS OF ERROR


 Appellant advances six points of error. He challenges the legal and factual
sufficiency of the evidence to support his conviction, claiming the evidence did not show that the
weapon found on his person was a "handgun" as alleged. Appellant urges also that he was denied
his constitutional right to the effective assistance of counsel. Further, appellant contends that the
trial court erred (1) in failing to properly admonish him before he engaged in self-representation,
(2) in failing to instruct the jury on the defense of insanity, and (3) in entering an affirmative
finding of the "use" of a deadly weapon in the judgment. We will affirm the conviction after
reforming the judgment.


FACTS


 About 9:00 p.m. on the evening of March 13, 1997, San Antonio Police responded
to a man-with-a-gun disturbance call at 400 Cumberland Boulevard. At the address, Officer Jay
Krick contacted Elida Espino, appellant's mother, who was crying, frantic, excited and scared. 
She reported that appellant had been shooting at the house. She was afraid that appellant might
kill himself. Appellant was not in the area. Officer Krick obtained appellant's name, age,
physical description, and other information which he passed on to Officer Juan Gomez who
arrived at the address. The information was also dispatched to communications for broadcast to
other officers.

 Gomez found appellant walking on Nogalitos Street about two miles from his
mother's house. The officer detained appellant and frisked him because of the reported shooting.
An unloaded handgun (1) was found on appellant's person and turned over to Officer Mario Jacinto,
who had arrived at the scene of the arrest in a separate vehicle. Jacinto delivered the weapon to
the police property room. He identified State's exhibit No. 4 as the weapon taken from appellant.

 Appellant testified in his own behalf that on March 13, 1997, he was drinking beer
with some friends at the apartment complex where he lived; that after answering a pay telephone
he returned to drink his beer; that he later learned someone had "drugged" his beer; that he
became "confused," "felt paranoid, "angry," "like he was ready to commit suicide," and "not
in [his] right state of mind." Appellant related that his girlfriend drove him to his mother's house. 
They were accompanied by "John," whose last name was unknown, but who lived across the
street from appellant. After arriving at his mother's house, appellant reported that "John" began
firing a gun. Appellant took the gun from "John" and walked away carrying the gun. Appellant
admitted that he was arrested with the weapon in his possession under the circumstances earlier
described.

 Appellant testified that his mother had moved to Kentucky and for financial reasons
could not return for the trial; that he and his girlfriend had broken up and she had moved and had
not been located; and that "John" would never "come clean" about the possession of the handgun.

 Appellant acknowledged that he had been previously convicted of the three felonies
alleged in the indictment. 


AFFIRMATIVE FINDING


 In his first point of error, appellant contends that the trial court erred in including
in the judgment a statement that the jury affirmatively found that appellant "used" a deadly
weapon during the commission of the offense. (2) The jury made no such finding. Where the
indictment does not allege the "use" of a deadly weapon per se and no special issue concerning
the defendant's "use" of a deadly weapon is submitted to the jury, it is error for the trial court to
enter a finding of the use of a deadly weapon in connection with that offense. See Davis v. State,
897 S.W.2d 791, 793 (Tex. Crim. App. 1995); Polk v. State, 693 S.W.2d 391, 395 (Tex. Crim.
App. 1985); Sheridan v. State, 950 S.W.2d 755, 759 (Tex. App.--Fort Worth 1997, no pet.). 
Mere possession of a firearm does not by itself constitute "use" of a deadly weapon during the
commission of an offense under section 46.04. See Ex parte Petty, 833 S.W.2d 145, 146 (Tex.
Crim. App. 1992). The instant indictment merely alleged "possession" of a handgun and no
special issue was submitted to the jury. The State concedes error. The first point of error is
sustained. The judgment will be reformed to delete the affirmative finding.


SELF-REPRESENTATION


 In his second point of error, appellant presents a Faretta v. California, 422 U.S.
806 (1975), question. He contends that he was not properly admonished by the trial court as to
the dangers and disadvantages of representing himself and that he did not waive the right to
counsel.

 Appellant was represented at trial by court-appointed counsel except for a brief
hearing on some pretrial pro se motions and during the voir dire examination of the jury panel. 
Prior to the exercise of his peremptory challenges, appellant agreed to again be represented by his
court-appointed counsel. Appellant's contention relates only to the time he proceeded pro se.

 To be constitutionally effective, the decision to represent one's self must be made
(1) competently, (2) knowingly and intelligently, and (3) voluntarily. See Godinez v. Moran, 509
U.S. 389, 400-01 (1993); Collier v. State, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997). The
decision to waive counsel and proceed pro se is made knowingly and intelligently "if it is made
with a full understanding of the right to counsel, which is being abandoned, as well as the dangers
and disadvantages of self-representation." Collier, 959 S.W.2d at 626 (citing Faretta, 422 U.S.
at 834-36). "The decision is made 'voluntarily' if it is uncoerced." Collier, 959 S.W.2d at 626.

 On April 1, 1999, the day the instant case was set for trial and prior to jury
selection, appellant asked the trial court to replace his court-appointed counsel, citing a
disagreement about the filing of pretrial motions. The trial court refused to replace counsel. 
Appellant then asserted his right to self-representation.

 The trial court, among other things, determined that appellant had not finished high
school but had a G.E.D. Appellant rejected the trial court's suggestion that in appellant's best
interests he needed someone trained in the law. Appellant informed the trial court that he had
studied law for eleven months while he had been incarcerated. The trial court pointed out the
years of study it normally takes a person to qualify as a lawyer. Appellant responded that he
knew the federal and state constitutions and both the Texas penal code and code of criminal
procedure. In response to the court's inquiries, appellant stated that he knew the time limit on
pretrial motions and had already filed some seventeen pro se motions; and that he knew the rules
about jury selection. The court admonished appellant that in acting pro se he would not get help
from any lawyer or "anything like that," and would be subject to the same rules as any attorney. 
Appellant acknowledged that he understood. The trial court allowed appellant to proceed pro se
with the court-appointed counsel standing by in the courtroom.

 After appellant represented himself on several pretrial motions, the trial court asked
him:


Q: Have you ever heard that saying about having to represent yourself, you have
a fool for a client?


A: Yeah, I've heard that saying, but I feel like if I don't win at trial I have a lot
of access [sic] on appeal because my 14th Amendment rights were violated,
due process clause.



 The trial court admonished appellant that any claimed error on appeal had to be
preserved at the trial level.

 The record then reflects:


The Court:  It's not quite as easy as it may seem to you.


The Defendant:  It doesn't make a difference.


The Court:  Okay. You do know . . .


The Defendant:  I don't see why . . .


The Court:  . . . what happened to Dr. Kevorkian?


The Defendant:  I'm not a murderer, though.


The Court:  But you know that he was represented by an attorney five times,
acquitted every time. The one time he decided to represent himself, he got
convicted. (3)

The Defendant:  I understand . . . .



 The trial court denied appellant's request for the appointment of a different lawyer.
After the voir dire of the jury panel, appellant began asking legal questions of the trial court and
inquiring if he should not have been advised of how to represent himself. The trial court told
appellant, "You said that you wanted to represent yourself. If you'd like, I'll have Mr. Garcia
step in and represent you from this point forward . . . . You're the one who said you knew the
law." The trial court then explained that it could not be the lawyer for appellant. Appellant then
agreed to allow his court-appointed lawyer to reenter the case before the jury lists were stricken. 
The only time appellant represented himself was during the hearing on several pretrial motions
and during the voir dire examination of the jury panel.

 An indigent accused cannot manipulate his right to counsel so as to obstruct orderly
court procedure or to interfere with the fair administration of justice. See Hubbard v. State, 739
S.W.2d 341, 344 (Tex. Crim. App. 1987); Halliburton v. State, 928 S.W.2d 650, 651-52 (Tex.
App.--San Antonio 1996, pet. ref'd). "An accused does not have the right to have his own choice
of appointed counsel, and unless he waives his right to counsel and chooses to represent himself,
or shows adequate reason for the appointment of new counsel, he must accept counsel appointed
by the court." Garner v. State, 864 S.W.2d 92, 98 (Tex. App.--Houston [1st Dist.] 1993, pet.
ref'd). A trial judge is under no duty to search until he finds an attorney agreeable to an indigent
defendant. See Halliburton, 928 S.W.2d at 632.

 When an accused asserts his right to self-representation, a trial court need follow
no "formulaic questioning" or particular "script" to assure itself that a defendant is asserting this
right with his eyes open. See Burgess v. State, 816 S.W.2d 424, 428 (Tex. Crim. App. 1991). 
The only requirement is that the record "contains proper admonishments concerning pro se
representation and any necessary inquiries of the defendant so that the trial court may make 'an
assessment of his knowing exercise of the right to defend himself.'" Id.; see also Halliburton,
928 S.W.2d at 652.

 In Burgess, 816 S.W.2d at 428-29, the court wrote:


In this cause, given the option to proceed with unwanted counsel or to represent
himself, and adequately admonished as to the danger and disadvantages, Archie
persisted in his assertion of his right to self-representation. Implicit in that
assertion is a valid waiver of counsel. We perceive nothing unfair in putting an
accused to this choice, so long as the trial court is satisfied that he is competent
to make it and that he does so informedly and with his eyes open.



 We conclude from the record that appellant was made aware of the disadvantages
of proceeding pro se and waived the right to counsel. The second point of error is overruled. (4)


DEFENSE OF INSANITY


 In the third point of error, appellant contends that the "trial court failed to instruct
the jury as to the defense of insanity" despite a timely request to do so. See Tex. Code Crim.
Proc. Ann. art. 36.15 (West Supp. 2000). Appellant relies upon his own testimony to raise the
issue.

 Section 8.01 of the Texas Penal Code provides:


(a)  It is an affirmative defense to prosecution that, at the time of the conduct
charged, the actor, as a result of severe mental disease or defect, did not know that
his conduct was wrong.


(b)  The "mental disease or defect" does not include an abnormality manifested
only by repeated criminal or otherwise antisocial conduct.



Tex. Penal Code Ann. § 8.01 (West 1994). (5)

 "The insanity defense provided in Section 8.01 of the Penal Code shall be
submitted to the jury only if supported by competent evidence." Tex. Code Crim. Proc. Ann.
art. 46.03, § 1(a) (West Supp. 2000).

 A person is presumed to be sane and to have sufficient judgment to be held
accountable for his acts unless the contrary appears. See Sims v. State, 807 S.W.2d 618, 626
(Tex. App.--Dallas 1991, pet. ref'd). The defendant bears the burden of proving by a
preponderance of evidence his insanity at the time of the commission of the offense. See Martinez
v. State, 867 S.W.2d 30, 33 (Tex. Crim. App. 1993). The State has no burden to prove sanity. 
See Sims, 807 S.W.2d at 626. 

 The defense of insanity may be raised by lay witnesses alone, without testimony
by medical experts. See Pacheco v. State, 757 S.W.2d 729, 733 (Tex. Crim. App. 1988). The
testimony of the accused, standing alone, may be sufficient to warrant the submission of an
affirmative defense. See Thomas v. State, 678 S.W.2d 82, 84 (Tex. Crim. App. 1984).

 Appellant testified that he could remember only "bits and pieces" of the events
surrounding the offense. He did recall drinking beer with some friends at his apartment complex
during the afternoon. At some point appellant went to answer a pay telephone. Upon his return,
he continued to drink his beer and became "confused," felt "paranoid," "angry," and "not in [his]
right state of mind." Appellant stated that he felt like he was going to commit suicide, although
he never had such feelings previously. He explained that someone slipped "some kind of
hallucinogenic drug or something" into his beer without his knowledge and "that's what started
the whole thing." After taking the gun away from "John," appellant said that he carried the
weapon because he did not "know what [he] was doing."

 The three officers at the scene of the arrest, Gomez, Jacinto, and Krick, generally
testified that appellant seemed aware of his circumstances and to comprehend what was happening. 
It was only after appellant was placed in a patrol car he began cursing and yelling obscenities. 
Appellant reported that he was later taken to "Mental Health." There was no medical testimony.

 The record is devoid of any evidence that appellant suffered any severe mental
disease or defect, or that as a result of his mental disease or defect appellant did not know that his
conduct was wrong. The insanity defense claim was not supported by competent evidence. See
Denison v. State, 651 S.W.2d 754, 760 (Tex. Crim. App. 1983). The trial court did not err in
failing to submit the issue to the jury. See Coble v. State, 871 S.W.2d 192, 201-02 (Tex. Crim.
App. 1993). The third point of error is overruled.


INEFFECTIVE ASSISTANCE OF COUNSEL


 In the fourth point of error, appellant urges that "appellant's counsel at trial was
ineffective in failing to give the required notice to raise the defense of insanity." Actually,
appellant's trial counsel filed a written notice of intention to raise the insanity defense but it was
not timely filed with the trial court and the prosecuting attorney as required. The written notice
was filed the day before the cause was set for trial. Such notice was required to be filed "at least
ten days prior to the date the case is set for trial." Tex. Code Crim. Proc. Ann. art. 46.03,
§ 2(a)(1) (West 1979). If the notice is not timely filed, "evidence on the insanity defense is not
admissible unless the court finds that good cause exists for failure to give notice." Id. art. 46.03,
§2(b). The belated filing of the notice is the sole basis of appellant's ineffective assistance of
counsel claim.

 The standard for appellate review of the effectiveness of counsel, either retained
or appointed, is the two-pronged test of Strickland v. Washington, 466 U.S. 668 (1984), adopted
in Texas by Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).

 The claimant under the Strickland standard must prove that his counsel's
representation so undermined the "proper functioning of the adversarial process that the trial
cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. A defendant's
claim that counsel's assistance was so defective as to require reversal of a conviction has two
components. First, the convicted defendant must show that his counsel's performance was
deficient; second, he must show the deficient performance prejudiced the defense. See id. at 687;
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In order to show prejudice, the
defendant must demonstrate that there is a reasonable probability that but for counsel's deficient
performance, the result of the proceedings would have been different. See Valencia v. State, 946
S.W.2d 81, 83 (Tex. Crim. App. 1997); Jackson, 877 S.W.2d at 771.

 The defendant has the burden to prove a claim of ineffective assistance of counsel
by a preponderance of the evidence. See McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim.
App. 1996). If the defendant fails to make the required showing of either deficient performance
or prejudice, his claim must fail. See id.

 The review of a claim of ineffective assistance of counsel is highly deferential. See
Strickland, 466 U.S. at 689. We must indulge a strong presumption that trial counsel's conduct
falls within a wide range of reasonable representation and that the challenged action might be
considered sound trial strategy. See McFarland, 928 S.W.2d at 500. We assess the totality of
counsel's representation rather than his or her isolated acts or omissions. See Strickland, 466
U.S. at 689; Oestrick v. State, 939 S.W.2d 232, 239 (Tex. App.--Austin 1997, pet. ref'd).

 Allegations of ineffective assistance will be sustained only if they are firmly
founded. See Smith v. State, 676 S.W.2d 379, 395 (Tex. Crim. App. 1984). The particular facts
and circumstances of each case must be considered in any claim of ineffective assistance. See
Johnson v. State, 691 S.W.2d 619, 626 (Tex. Crim. App. 1984). The fact that another attorney
might have pursued a different course of action at trial will not support a finding of
ineffectiveness. See Banks v. State, 819 S.W.2d 676, 681 (Tex. App.--San Antonio 1991, pet.
ref'd). The Strickland standard has never been interpreted to mean that the accused is entitled to
errorless or perfect counsel. See Bridge v. State, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986).

 Appellant concedes that his trial counsel requested an examination for competency
and sanity, filed numerous pretrial motions including a motion to suppress, cross-examined
witnesses, and attempted to raise a defense. Appellant also acknowledges that an isolated
omission or failure to object is not normally considered ineffective assistance of counsel. See
Walston v. State, 697 S.W.2d 517, 519 (Tex. App.--San Antonio 1985, pet. ref'd). Nevertheless,
appellant claims the belated filing of the notice directly affected the only defense he had to offer. 
Appellant's trial counsel, after resuming his duties following appellant's self-representation, did
ask the trial court for a ruling on his "notice of intention to raise insanity defense." Counsel
recognized the late filing but urged "good cause" on the basis of undisclosed information he
received from appellant "last week" and his effort to corroborate appellant's "belief." Counsel
also noted the incompetency finding by a psychiatrist. The State's objection to any insanity
defense evidence because of the late filing was sustained. There is no claim that the trial court
erred in its "good cause" ruling--only that counsel was ineffective.

 We have only the trial record before us to determine appellant's contention. No
motion for new trial was filed. See Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993)
(matters not determinable from record may be raised by new trial motion).

 The burden of proof is on appellant and the record before us is not sufficient to
show that counsel's performance was deficient. Moreover, whether or not trial counsel's
performance was deficient, under the second prong of Strickland appellant must show that the
result of the proceeding would have been different but for trial counsel's error. See Oestrick, 939
S.W.2d at 237. In making the determination of prejudice, we must consider the totality of the
evidence before the jury and see if the decision reached would have been different absent the
error. See Strickland, 466 U.S. at 696; Shaw v. State, 874 S.W.2d 115, 119 (Tex. App.--Austin
1994, pet. ref'd). 

 Appellant urges that his defense was prejudiced by counsel's deficient performance
because he was unable to offer, at the guilt-innocence stage of the trial, Dr. Randall Seller's
testimony that appellant suffered from a mental illness--"schizophrenia, paranoid"--to which Dr.
Sellers testified at the penalty stage of the trial.

 Dr. Sellers, a psychiatrist, was appointed by the trial court to examine appellant's
competency to stand trial and his sanity at the request of appellant's counsel. Sellers filed two
reports with the trial court, one report for each issue. After a 30 minute jail interview, Dr. Sellers 
was "unable to assess whether he [appellant] was aware of the wrongfulness of the alleged acts." 
Thus, the doctor was unable to express an opinion on the issue of insanity as a defense. Dr.
Sellers found appellant to be "an alert 26 year old," "oriented as to person, place, and time," with
"immediate memory intact," but appellant's thought processes were "tangential and illogical." 
Appellant suffered from "schizophrenia--paranoid," manifested by delusions of persecution by a
secret society. Appellant had been "committed" to the State hospital after his arrest.

 At the competency hearing before a different jury, Dr. Sellers testified in
accordance with his report that appellant was not competent to stand trial. Appellant also
testified. He stated that he was sent to the San Antonio State Hospital after his arrest because
someone had slipped LSD into his drink and that he got out of the hospital when the effects of the
drug had worn off. Appellant acknowledged telling Dr. Sellers a secret society was "out to get
me," but he was "just saying something in order to help me escape being--having to stand trial." 
So, in other words, "I made it appear as if I wasn't competent, but I am competent to stand trial." 
The jury agreed and found appellant competent to stand trial.

 Dr. Sellers testified again at the penalty stage of the trial and repeated his testimony
from the competency hearing. At no time did he testify that appellant suffered from a severe
mental disease or defect so that appellant did not know his conduct was wrong. See Tex. Penal
Code Ann. § 8.01(a) (West 1994). In fact, his report to the trial court demonstrated that he had
been unable to form an opinion on that issue. We conclude appellant has not sustained his burden
of proof to show that save for counsel's error the result of the proceedings would have been
different. The fourth point of error is overruled. (6)



LEGAL SUFFICIENCY


 In his fifth point of error, appellant challenges the legal sufficiency of the evidence
to sustain the conviction. The challenge is limited in scope. Appellant argues that the evidence
failed to show that he possessed a handgun as alleged. The indictment alleged in pertinent part
that appellant possessed "a firearm, to wit:  a handgun away from the premises where he lived."

 "'Firearm' means any device designed, made, or adapted to expel a projectile
through a barrel by using the energy generated by an explosion or burning substance or any device
readily convertible to that use." Tex. Penal Code Ann. § 46.01(3) (West Supp. 2000). (7) 
"Handgun means any firearm that is designed, made, or adapted to be fired with one hand." Id.
(emphasis added). Edard Love, a firearms examiner for the Bexar County Crime Lab, testified
that the weapon in question met the statutory definitions of both a "firearm" and a "handgun." 
Love explained that weapon had been test-fired by Ronald Crumley, a firearms expert in Love's
office, and Love approved Crumley's report. The Raven-manufactured weapon had been test-fired with the Astra magazine with which it was received and with a Raven magazine.

 Appellant relies on Love's testimony that the Astra magazine was not manufactured
for the Raven handgun. When asked if the Crumley report indicated that "it had to be held up
in order for the gun to load properly," Love answered:


Well, it had to be because the [Astra] magazine is loose. It doesn't fit up well in
there. This magazine had to be held up like this, so you could raise the cartridge
high enough for the slide to pick it up and load it into the barrel for firing. So,
you just push up on it here.



 The record further reflects:


Q: And if they are going to fire it, they would have to play with this wouldn't
they? They would have to hold it?


A: Once it was loaded in on the first round it seemed to function all right after
that point.



 Appellant argues this testimony reflects that the weapon in his possession was not
a handgun because it could not be fired with one hand. The cold record leaves much to be desired
as to Love's actions and movements while he testified. The jury charge tracked the indictment
along with the statutory definition of "handgun." Appellant argued to the jury the contention he
now advances on appeal. The jury by its verdict rejected his contention.

 The jury was the trier of fact. See Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986). It may accept or reject any part of a witness's testimony. See id. 
Reconciliation of evidentiary conflicts is solely the function of the trier of fact. See Jackson v.
State, 672 S.W.2d 801, 804 (Tex. Crim. App. 1984); Miranda v. State, 813 S.W.2d 724, 733-34
(Tex. App.--San Antonio 1991, pet. ref'd).

 Accordingly, we find that the jury, as trier of fact, could rationally have concluded 
beyond a reasonable doubt that the weapon in question met the statutory definition of a
"handgun." See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Lane v. State, 933 S.W.2d 504,
507 (Tex. Crim. App. 1996); Cf. Flores v. State, 716 S.W.2d 505, 506-07 (Tex. Crim. App.
1986) (defective and broken switchblade knife); Flores v. State, 934 S.W.2d 855, 859 (Tex.
App.--Corpus Christi 1996, no pet.) (knuckles without finger rings); Maldonado v. State, 887
S.W.2d 508, 509 (Tex. App.--San Antonio 1994, no pet.) (knuckles). Appellant's fifth point of
error is overruled.


FACTUAL SUFFICIENCY


 In his sixth point of error, appellant challenges the factual sufficiency of the
evidence to sustain the conviction. We begin our review with the presumption that the evidence
supporting the judgment was legally sufficient. See Clewis v. State, 922 S.W.2d 126, 134 (Tex.
Crim. App. 1996). In a factual sufficiency analysis, we view the evidence without employing the
prism of "in the light most favorable to the verdict." Id. at 129. The verdict is to be set aside
only when the factual finding is against the great weight and preponderance of the evidence so as
to be clearly wrong and unjust. See id. A reviewing court must consider all of the evidence
impartially, comparing evidence that tends to prove the existence of a disputed fact or facts with
evidence that tends to disprove that fact or those facts. See Santellan v. State, 939 S.W.2d 155,
164 (Tex. Crim. App. 1997). The trier of fact at trial is still the sole judge of the weight and
credibility of the testimony. See id. The reviewing court may not intrude upon the fact finder's
role. See Jones v. State 944 S.W.2d 642, 647 (Tex. Crim. App. 1997). There should be a
deference to the findings of the jury. See Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).

 Appellant advances the same contention as he urged in his legal sufficiency
challenge. He has made no showing that a factual sufficiency analysis calls for a different result. 
We have examined all of the evidence impartially and, giving due deference to the jury's verdict,
we conclude that the verdict is not so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust. The sixth point of error is overruled. (8)

 The judgment is reformed to delete the finding that a deadly weapon was used. As 
reformed, the judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Jones, Patterson and Onion*

Reformed and, as Reformed, Affirmed

Filed: July 13, 2000

Do Not Publish













* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. At the hearing on the motion to suppress, Gomez described the handgun as a small .25
caliber chrome-plated Raven.
2. See Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2000), regarding
affirmative finding of "use" of a deadly weapon.
3. Reference is apparently made to Dr. Jack Kevorkian, a Michigan doctor, accused of
aiding extremely ill individuals to commit suicide, which accusations and criminal charges were
highly publicized in the national news media.
4. Appellant does not cite or rely upon article 1.051(g). See Tex. Code Crim. Proc. Ann.
art. 1.051(g) (West Supp. 2000). The statute is not mandatory. See Halliburton, 928 S.W.2d at
653; Burgess, 816 S.W.2d at 431.
5. Medically, an individual may be insane from mental disease or defect yet, legally, he
is not relieved of criminal responsibility for that crime unless his mental condition reached the
point where he was unable to distinguish between right and wrong. See Love v. State, 909
S.W.2d 930, 943 (Tex. App.--El Paso 1995, pet. ref'd).
6. Cf. Schaffer v. State, 590 S.W.2d 490, 492 (Tex. Crim. App. 1979) (holding that any
error by trial court in not finding "good cause" for late filing of notice requirement is not
reversible error unless it is shown that the evidence appellant would have offered at trial would
have raised the insanity defense).
7. The same definition was in effect at the time of the commission of the instant offense
(March 13, 1997) in the former version of section 46.01(3). See Act of May 29, 1003, 73d Leg.,
R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3685, effective September 1, 1994.
8. The constitutional authority to conduct factual sufficiency review has recently been
upheld. See Johnson v. State, No. 1915-98 (Tex. Crim. App. Feb. 9, 2000).



ence so as
to be clearly wrong and unjust. See id. A reviewing court must consider all of the evidence
impartially, comparing evidence that tends to prove the existence of a disputed fact or facts with
evidence that tends to disprove that fact or those facts. See Santellan v. State, 939 S.W.2d 155,
164 (Tex. Crim. App. 1997). The trier of fact at trial is still the sole judge of the weight and
credibility of the testimony. See id. The reviewing court may not intrude upon the fact finder's
role. See Jones v. State 944 S.W.2d 642, 647 (Tex. Crim. App. 1997). There should be a
deference to the findings of the jury. See Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).

 Appellant advances the same contention as he urged in his legal sufficiency
challenge. He has made no showing that a factual sufficiency analysis calls for a different result. 
We have examined all of the evidence impartially and, giving due deference to the jury's verdict,
we conclude that the verdict is not so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust. The sixth point of error is overruled. (8)

 The judgment is reformed to delete the finding that a deadly weapon was used. As 
reformed, the judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Jones, Patterson and Onion*

Reformed and, as Reformed, Affirmed

Filed: July 13, 2000

Do Not Publish













* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. At the hearing on the motion to suppress, Gomez described the handgun as a small .25
caliber chrome-plated Raven.
2. See Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2000), regarding
affirmative finding of "use" of a deadly weapon.
3. Reference is apparently made to Dr. Jack Kevorkian, a Michigan doctor, accused of
aiding extremely ill indivi