

# IN THE
# TENTH COURT OF APPEALS

## No. 10-06-00009-CR

**CHAD FENLEY DAVIS,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 85th District Court**
**Brazos County, Texas**
**Trial Court No. 04-01287-CRF-85**

## O P I N I O N

Appellant Chad Fenley Davis appeals his conviction for capital murder in which the State did not seek the death penalty. *See* TEX. PEN. CODE ANN. §§ 12.31(b), 19.03(a) (Vernon Supp. 2008). We will affirm.

### Procedural Background

Davis was charged with capital murder to which he pled not guilty. A jury found Davis guilty of capital murder and the court imposed an automatic life sentence. Davis filed a pro se motion for new trial. The motion was never ruled on, and Davis

filed a direct appeal arguing, among other things, that he was improperly denied counsel during the motion-for-new-trial period. We sustained his first issue and did not address his ten remaining issues. We abated the appeal so that a motion for new trial could be filed, presented, and heard. Davis's attorney then filed a motion for new trial, a hearing was held, and the trial court denied the motion. We now address Davis's ten remaining issues from his original brief and three additional issues raised in his post-abatement briefs.

## Background

Davis was charged with capital murder in the shooting death of Tommy Andrade. During the fact-intensive nine-day trial, the evidence established that Davis, along with his father, Willie Davis (Willie), and his brother Trey Davis (Trey), recruited three men, Boris Mogilevich, Bradley Padrick, and Jesse Mancuso, to steal $100,000 that Andrade had allegedly stolen from Davis.[1]

Witnesses testified that, on the night in question, Davis drove Padrick, Mogilevich, and Mancuso to the home of Andrade and provided them with handguns, a stun gun, and a can of mace. Padrick, Mogilevich, and Mancuso then kicked in Andrade's door and began asking him for the stolen money. Andrade allegedly began shooting, hitting both Mogilevich and Padrick and killing Mancuso. After Mogilevich was shot, he returned gunfire and killed Andrade. Mogilevich and Padrick then fled the scene, leaving Mancuso behind.

---

[1] Significant evidence was presented at trial alleging that all of these men were involved with drug trafficking and were known drug dealers.

Several witnesses, including Padrick, testified that they were recruited by Davis for the robbery but were not hired to kill Andrade. The jury charge stated that Davis could be convicted for the death of Andrade as a co-conspirator. The jury found Davis guilty of capital murder and he was assessed punishment at life in prison.

**Legal and Factual Sufficiency**

Davis's first four issues challenge the legal and factual sufficiency of the evidence. In issues two and three, he argues that the evidence was insufficient to prove that the shooting of Andrade was in furtherance of the unlawful purpose of the conspiracy to commit the offenses of aggravated robbery, aggravated assault, or burglary of a habitation. In issues four and five, Davis argues that the evidence is insufficient to prove that the shooting of Andrade should have been anticipated as a result of carrying out the conspiracy.

A person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery. TEX. PEN. CODE ANN. §§ 19.02(b)(1), 19.03(a)(2) (Vernon 2003 & Supp. 2008). If, in an attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out the conspiracy. *Id*. § 7.02(b) (Vernon 2003); *see Hooper v. State*, 255 S.W.3d 262, 265-66 (Tex. App.—Waco 2008, no pet.). Each conspirator is guilty of the resulting offense, even if he did not intend to commit it or intend that it be committed. *Ruiz v. State*, 579 S.W.2d

206, 209 (Tex. Crim. App. 1979); *see also Fuller v. State*, 827 S.W.2d 919, 932 (Tex. Crim. App. 1992) *cert. denied*, 509 U.S. 922; *Love v. State*, 199 S.W.3d 447, 453 (Tex. App.— Houston [1st Dist.] 2006, pet. ref'd) ("a defendant in a capital murder case may be convicted solely on a conspiracy theory of culpability contained in the jury charge"); *Hanson v. State*, 55 S.W.3d 681, 691 (Tex. App.—Austin 2001, pet ref'd). Thus, the State does not have to prove that the accused intended to shoot or kill the victim, or intended that the victim be shot, as long as the evidence established he conspired to commit the robbery and that he "should have" anticipated the murder as a result of carrying out the conspiracy to commit the robbery. *Moore v. State*, 24 S.W.3d 444, 447 (Tex. App.— Texarkana 2000, pet. ref'd).

Evidence that a defendant knew his co-conspirators might use guns in the course of the robbery can be sufficient to demonstrate that the defendant should have anticipated the possibility of murder occurring during the course of the robbery. *See Hooper*, 255 S.W.3d at 266; *see also Love*, 199 S.W.3d at 453. (holding evidence was sufficient to show murder was committed in attempt to carry out robbery and should have been anticipated by appellant when appellant helped plan robbery and knew that firearms would be used).

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to

determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7 (quoting *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)). The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence*," 69 TEXAS L. REV. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination. *Watson*, 204 S.W.3d at 416-17.

*Furtherance of the Conspiracy*

After a careful review of the evidence, we find that the evidence supports the conclusion that the murder of Andrade was committed in furtherance of the conspiracy's unlawful purpose. The jury heard the following evidence on the alleged conspiracy:

- Padrick testified that he became involved in the plan to rob Andrade when T.J. Parent[2] told him that Davis had gotten into a problem with a person who stole approximately $100,000 from him. T.J. promised Padrick that if he would go down to Houston and help Davis with this situation, T.J. would make sure that Padrick's mortgage was taken care of. Padrick flew to Texas with Mogilevich from Georgia, where they both stayed in Bryan on a tour bus owned by Willie. Padrick stated that he was working for Davis to make money and that he took his directions from Davis. Davis told Padrick that the reason he was here was because there was some money that was taken from him and he wanted Padrick to retrieve as much money or drugs that he possibly could, as well as bring Andrade back to him.

- One night, Padrick, Davis, Trey and Mogilevich drove through the parking lot of a College Station nightclub, and Davis pointed out Andrade to them. A few days before the shooting, Trey and Davis drove Padrick and Mogilevich by Andrade's house. Padrick testified that he noticed that there was a lot of traffic in and out of Andrade's house and that he was concerned that he and Mogilevich were the only two going into Andrade's house so he told Davis that they needed an additional person. Mancuso was thus recruited to join Padrick and Mogilevich. They later drove by Andrade's house three additional times before the robbery.

- After Mancuso arrived, they all had a meeting on the tour bus. Present were Padrick, Mogilevich, Mancuso, Davis, and Trey, and they had two guns, a stun gun, and a can of mace. They also discussed the plan. Padrick testified that "we were to go into the house. We were suppose to kick—you know, kick the door in to the residence and retrieve as much money and drugs and—as much valuables as we could as well as bring Tommy Andrade to the tour bus—to Chad Davis." The guns were loaded and were for "persuasion purposes."

- Padrick testified that a 1980s Lincoln was purchased specifically for going to Andrade's house.

---

[2] At trial, several witnesses stated that they knew that T.J. was a drug dealer and that Mogilevich worked for T.J.

- During the search of the residence of Trey and Willie, Officer Frank Malinak recovered a total of $15,273.25. In Trey Davis's room, he recovered a Kel Tec 9 millimeter assault rifle and a Glock .40 caliber automatic pistol. In an Impala located on the Davis property and registered to Trey Davis, he recovered a 12-gauge pump shotgun.

Viewing all of the evidence in the light most favorable to the verdict, we conclude that the jury could have found the essential elements of the crime beyond a reasonable doubt. *See Hooper*, 255 S.W.3d at 265-66; *Love*, 199 S.W.3d at 452-54. Viewing the evidence in a neutral light, we also conclude that the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Watson*, 204 S.W.3d at 414-15; *Hooper*, 255 S.W.3d at 267. Because the evidence is both legally and factually sufficient to support a finding that the shooting that resulted in Andrade's death occurred in furtherance of the unlawful purpose of the conspiracy, we overrule his issues two and three. TEX. PEN. CODE ANN. § 7.02(b).

*Anticipation*

The evidence is also sufficient to support a finding that Davis should have anticipated the possibility of a murder resulting from the course of committing this robbery. According to Padrick, Davis provided the loaded handguns and the stun gun and did anticipate that they might be used. Crockett testified that he overheard a conversation between Davis and Trey where Davis stated "if guns go off, some guns go off." The evidence further shows that the assailants anticipated the potential use of gun violence. Padrick testified that he asked Davis to recruit an additional person to rob Andrade because of the danger involved with the frequent drug traffic in and out of

Andrade's home. Goodman testified that although he was never hired to murder Andrade, he did not participate in the robbery because of the great potential for the robbery to escalate due to the large amount of money involved. A jury could infer from these statements that Davis anticipated, or should have anticipated, the possibility that the assailants might resort to using the loaded guns that he provided them if necessary. *See Hooper*, 255 S.W.3d at 266; *Love,* 199 S.W.3d at 453.

Davis discussed with Padrick and the other parties the possibility of gun violence. He knew that Andrade was a drug dealer. He provided the assailants with loaded weapons. Viewing all the evidence in the light most favorable to the verdict, we find the evidence is legally sufficient to support a finding that Davis should have anticipated the events that occurred. *See id.*; TEX. PEN. CODE ANN. § 7.02(b). Our neutral review of all the evidence does not demonstrate either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the jury's finding clearly wrong and manifestly unjust. *See Watson,* 204 S.W.3d at 415.

Because we conclude that the evidence is legally and factually sufficient to support a finding that the shooting that resulted in Andrade's death should have been anticipated by Davis, we overrule Davis's fourth and fifth issues. *See Hooper*, 255 S.W.3d at 266-67; *see also Williams v. State*, 974 S.W.2d 324, 330 (Tex. App.—San Antonio 1998, pet. ref'd) (holding evidence sufficient that murder committed in course of pawn shop robbery was foreseeable to appellant where evidence showed at least one of five conspirators arrived at scene armed with gun, there was testimony by accomplice

witness that four of five conspirators left apartment with weapons, and there was evidence that bullets or casings from two different guns were recovered from scene).

## Accomplice-Witness Testimony

In his sixth issue, Davis complains that the evidence is insufficient to corroborate the testimony of accomplice Padrick. Davis argues that when Padrick's testimony is eliminated, the remaining non-accomplice evidence does not tend to connect him to the offense.

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN art. 38.14 (Vernon 2005).

In conducting a sufficiency review, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Hardie v. State*, 79 S.W.3d 625, 630 (Tex. App.—Waco 2002, pet. ref'd). "While the accused's mere presence in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense." *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). "Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration." *Id*.

The record contains sufficient non-accomplice evidence tending to connect Davis to the conspiracy. Goodman, who was originally recruited to help "steal" Davis's $100,000 from Andrade, testified that he came to Texas with Mogilevich to get back Davis's stolen money. Davis picked them up in Houston at the airport and dropped them off at a hotel, where they spent the night. Trey then picked them up the next morning and took him to his house. Initially, Goodman believed that Davis wanted him and Mogilevich to tell Andrade to pay the money back. Specifically, Davis told Goodman "we might find him at a strip club or, like at a rim shop; and they wanted us to approach him and let him know that he needed to pay back the money." The Davises then suggested that, if they located Andrade's home, they could burglarize it and take jewelry, money, and drugs. Goodman told the Davises that because he had previously been in jail for burglary, he was no longer interested in helping them. He testified that he thought the burglary would probably escalate into something beyond a robbery because he felt that someone who was willing to steal $100,000 was probably not a pushover. Goodman refused to participate and asked Davis to take him to the airport so that he could leave. Goodman returned to Georgia later that evening.

Crockett testified that he heard Davis mention plans to go and steal back the money that had been stolen from him. Crocket also heard Davis and Trey discuss what would happen if the plan escalated. Crockett testified that when asked about the use of force in the robbery, Davis replied, "if some guns go off, some guns go off." He also heard Davis say, "if shit hits the fan, they were going to take care of business." He then later saw Mogilevich driving the Lincoln with Davis and Padrick.

In sum, Padrick testified that the plan of action he entered into with Davis called for the assailants to break into Andrade's residence, take property, and bring Andrade to Davis in the tour bus located at Willie Davis's home. Removing that testimony as accomplice witness testimony, the testimony by both Goodman and Crockett sufficiently corroborate Padrick's testimony. Because this non-accomplice testimony tends to connect Davis to the offense and thereby corroborates Padrick's testimony, we overrule Davis's sixth issue. *See McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997).

### Self-Defense

In his seventh issue, Davis argues that the trial court erred in denying his requested self-defense instruction. *See* TEX. PEN. CODE ANN. § 15.04(b) (Vernon 2003). During the charge conference, Davis asked the court to submit a charge to the jury on the law of self-defense. The trial court denied the request and ultimately told the jury that self-defense was not available in this case because the burglars entered Andrade's home while unlawfully possessing firearms. Davis contends that a defendant is entitled to an instruction on self-defense if the evidence raises the issue, whether the evidence is strong or weak, unimpeached or contradicted, regardless of what the trial court may think about the credibility of the defense. *See Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). However, "no error is shown in the denial of a defensive instruction if the evidence establishes as a matter of law that the defendant is not entitled to rely on this defense." *Johnson v. State*, 157 S.W.3d 48, 50 (Tex. App.—Waco 2004, no pet.); *see Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).

In general, "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX. PEN. CODE ANN. § 9.31(a) (Vernon 2003). Further, a "defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence . . . ." *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App 1996); *VanBrackle v. State*, 179 S.W.3d 708, 712 (Tex. App.—Austin 2005). However, if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue. *Ferrel*, 55 S.W.3d at 591; *Williams v. State*, 35 S.W.3d 783, 787 (Tex. App.— Beaumont 2001, pet. ref'd).

The court in *Williams* found no error in the denial of a self-defense instruction when the defendant intentionally sought out the victim to discuss their differences while unlawfully armed with a handgun. *See Williams*, 35 S.W.3d at 786-87; *see also* TEX. PEN. CODE ANN. § 9.31(b)(5) (Vernon 2003) (self-defense not justified if defendant seeks out victim to discuss differences while unlawfully carrying a weapon).

Davis concedes that the evidence established that the assailants carried weapons into the trailer. In addition to that evidence, Officer Kindell testified that the weapons used at the scene were unlicensed and therefore illegal. Although Davis argues that entry into the trailer was for purposes other than a discussion of differences, the evidence establishes as a matter of law that the assailants sought interaction with Andrade over the stolen money while the assailants were illegally carrying handguns. *See Williams*, 35 S.W.3d at 786-87. As a matter of law, the assailants were not justified in

using force. Because the trial court did not err in refusing to instruct the jury on the issue of self-defense, Davis's seventh issue is overruled.

## False Testimony

Davis's eighth issue alleges that the trial court erred in allowing Padrick to "falsely testify" during trial in violation of Davis's due process rights under the Sixth and Fourteenth Amendments to the United States Constitution and article 1, sections 10 and 19 of the Texas Constitution. At trial, Padrick testified on direct and cross-examination that he did not watch the videotape of his statement before he testified. After both sides had finished questioning Padrick and the jury had been excused for lunch, the State told Davis's counsel that Padrick had seen the videotape. He told the defense that, although Padrick testified he did not see the tape, he was aware that Padrick had indeed reviewed the tape with his lawyer. The State then said that it would stipulate that Padrick had seen the tape or bring Padrick back on the stand. Davis's counsel thanked the State for the information but stated that neither action was necessary.

Although Davis now complains that Padrick lied under oath and that the State failed to correct it, Davis failed to lodge a timely or specific objection to the allegedly false testimony. A defendant must object to the State's use of allegedly false evidence to preserve the complaint for appeal. *See Haliburton v. State*, 80 S.W.3d 309, 315 (Tex. App.—Fort Worth 2002, no pet.) (holding defendant must object to false testimony of witnesses to preserve issue for appellate review); *see also* TEX. R. APP. P. 33.1. Davis

therefore failed to preserve this issue for appellate review. *Haliburton,* 80 S.W.3d at 315. His eighth issue is overruled.

## Charge Error

Davis's arguments intertwined within his ninth,[3] tenth,[4] and eleventh[5] and third[6] supplemental issues contends that the trial court fundamentally erred in allowing the State to submit a jury instruction on the theory of "party liability" when the indictment did not include such an allegation.

Davis acknowledges that the Court of Criminal Appeals has repeatedly held that a trial court may charge the jury on the law of parties even though there is no such allegation in the indictment. *See, e.g., Pitts v. State,* 569 S.W.2d 898 (Tex. Crim. App. 1978) (when evidence supports a charge on the law of parties, the court may charge on the law of parties even though there is no such allegation in the indictment); *Marable v. State,* 85 S.W.3d 287, 287 (Tex. Crim. App. 2002) (citing cases) (reiterating that "it is well-settled that the law of parties need not be pled in the indictment."). Nonetheless, he urges us to overrule this line of cases. We lack authority to do so. Davis's ninth, tenth, eleventh, and third supplemental issues are overruled.

---

[3]     Davis's ninth issue states that the trial court committed fundamental, egregious error when it submitted the case on a theory of liability that was not alleged in the indictment.

[4]     Davis's tenth issue states that the trial court violated his State constitutional right to due course of law when it submitted the case on a theory of liability that was not alleged in the indictment.

[5]     Davis's eleventh issue states that the trial court violated his federal constitutional right to due process of law when it submitted the case on a theory of liability that was not alleged in the indictment.

[6]     Davis's third supplemental issue argues that he suffered egregious harm when the trial court erroneously instructed the jury that it could convict him of capital murder if it found beyond a reasonable doubt that the shooting should have been anticipated as a result of the carrying out of the conspiracy when it was not alleged in the indictment.

**Motion for New Trial**

In his supplemental brief, Davis asserts that the court abused its discretion by failing to grant his motion for new trial based upon newly discovered evidence. The motion for new trial was brought on the grounds of newly discovered evidence and ineffective assistance of counsel. The trial court held a hearing on the motion for new trial and witnesses testified about the newly available evidence, as well as the ineffective assistance of counsel claim. The motion was denied.

*Newly Available Evidence*

In his first supplemental issue, Davis argues that new evidence, consisting of testimony by co-defendant Mogilevich, was unavailable[7] at the time of Davis's trial and demonstrates the lack of intent to kill at the time of the shooting. Willie's trial took place after Davis's trial. By the time of Willie's trial, Mogilevich had been apprehended and provided a statement that said that he shot Andrade. Davis argues that if Mogilevich had been available to testify, counsel would have called him to testify on the issue of lack of intent to kill.

To obtain a new trial upon "newly available" evidence, the following elements are required:

> (1) the newly discovered evidence was unknown to the movant at the time of trial;
> (2) the movant's failure to discover the evidence was not due to his want of diligence;
> (3) the evidence is admissible and not merely cumulative, corroborative, collateral or impeaching; and

---

[7] Mogilevich was unavailable to testify because he was a fugitive in Europe at the time of Davis's trial.

(4) the evidence is probably true and would probably bring about a different result in another trial.

*Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002); *Ashcraft v. State*, 918 S.W.2d 648, 653 (Tex. App.—Waco 1996, pet. ref'd) (citing *Moore v. State*, 882 S.W.2d 844, 849 (Tex. Crim. App. 1994)).

The granting of a motion for new trial lies within the discretion of the trial court. We do not substitute our judgment for that of the trial court but rather decide whether the trial court's decision was arbitrary or unreasonable. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). Motions for new trial on grounds of newly discovered evidence are not favored and are viewed with great caution. *Drew v. State*, 743 S.W.2d 207, 225 (Tex. Crim. App. 1987); *Frank v. State*, 183 S.W.3d 63, 71 (Tex. App.—Fort Worth 2005, pet. ref'd); *Ashcraft*, 918 S.W.2d at 653.

At the hearing, Mogilevich testified that after he broke into Andrade's home, Andrade shot him three times. He claimed that as a result of being shot in the head, blood splattered on his face blurring his vision, and he then raised his gun and shot Andrade in the chest. Davis argues that this testimony by Mogilevich reflects that he did not intend to kill. However, Davis has failed to show that this evidence was unknown and not cumulative. *Delamora v. State*, 128 S.W.3d 344 (Tex. App.—Austin 2004, pet. ref'd).

During the trial, Padrick testified about Mogilevich's condition. He stated that "[Mogilevich] was shot in the head, shoulder and back and he had blood coming all down his face." Padrick also testified that he did not anticipate that a gun would be

used in the burglary and that he was specifically told that his job would be to rough somebody up. Consequently, the substance of Mogilevich's testimony was known and merely cumulative of evidence already presented. Furthermore, the testimony by Mogilevich would not have brought about a different result. At the motion-for-new-trial hearing, Dan Cogdell, Davis's trial counsel, testified that he might not have called Mogilevich to the stand even if his testimony was available. Mogilevich testified that as Davis was giving him the guns for the robbery, Davis said, "do whatever it takes to get your money back." Mogilevich also testified that the use of deadly force was anticipated. Cogdell noted that this testimony would have destroyed the defensive theory—that there was no intent to kill and Mogilevich and others were not sent there with directions to kill.

Finally, intent to commit the felony actually committed is not required under section 7.02(b). TEX. PEN. CODE ANN. § 7.02(b); *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). Davis did not meet the requirements for obtaining a new trial based on newly discovered evidence. *Keeter*, 74 S.W.3d at 36-37. Therefore, we find that the trial court did not abuse its discretion in denying his motion for new trial. We overrule Davis's first supplemental issue.

*Ineffective Assistance of Counsel*

Davis contends in his final issue that he received ineffective assistance of counsel. He asserts that Cogdell was ineffective in at least 35 different respects, including areas such as failing to object to improper opening and closing statements, extraneous

offenses, and irrelevant and hearsay evidence, and in failing to impeach witnesses on perjured statements and plea deals.

The standard in *Strickland v. Washington* applies to a claim of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail, a defendant must first show that his counsel's performance was deficient. *Id.* at 687, 104 S.Ct. at 2064; *see Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). Then it must be shown that this deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).

Here, Davis does not argue or supply authority as to why each item of evidence was inadmissible. Davis merely concludes that the opening and closing arguments were improper, the extraneous offense testimony was inadmissible and that some testimony was irrelevant or hearsay evidence by simply listing the items. "When an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible." *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002); *see Flowers v. State*, 133 S.W.3d 852, 857 (Tex. App.—Beaumont 2004 no pet.). Davis does not demonstrate the evidence was inadmissible. Therefore, we cannot say counsel's failure to object constituted ineffective assistance. This contention is overruled.

Lastly, Davis argues that trial counsel was ineffective for failing to correct Padrick's perjured statements regarding reviewing his videotaped statement and for not impeaching several witnesses on plea deals made with the State. At the hearing, Cogdell stated that he found the testimony by Padrick to be far more favorable to Davis than he originally expected. He stated that he did not want to risk recalling Padrick and attacking his credibility because it would cause the jury to disbelieve the favorable statements Padrick made toward Davis's defensive theory of the case. Cogdell's performance here cannot be held to be deficient because it was based on a sound trial strategy. *See Moore v. State*, 983 S.W.2d 15, 21 (Tex. App.—Houston [14th Dist.] 1998, no pet.). At the hearing, Cogdell also testified as to why he did not impeach witnesses on deals made with the State. He stated that several witnesses gave favorable testimony and therefore he did not want to attack their credibility and that the other witnesses were immaterial and did not implicate Davis in this case. We agree. Once again, Cogdell's performance cannot be held to be deficient because it was based on a sound trial strategy. *Id.* We cannot say that the evidence set out by Davis establishes that counsel rendered ineffective assistance. We overrule Davis's second supplemental issue.

## Conclusion

Having overruled all of Davis's issues, we affirm the judgment of the trial court.


BILL VANCE
Justice

Before Chief Justice Gray,
    Justice Vance, and
    Justice Reyna
    ("Chief Justice Gray does not join any part of the Court's Opinion. He joins only the judgment of the Court to the extent that it results in affirming the trial court's judgment of Chad Davis's conviction and life sentence. A separate opinion will not follow.")
Affirmed
Opinion delivered and filed September 24, 2008
Publish
[CRPM]