Affirmed and Opinion filed March 16, 2010



 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-08-00787-CR



 

Dan Hernandez, Jr., Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 177th
District Court

Harris County, Texas

Trial Court Cause No. 1058490



 

OPINION

Appellant, Dan Hernandez, Jr., was convicted of
murder and sentenced to life imprisonment.  In two issues, appellant contends
the evidence is legally and factually insufficient to support the verdict and
the trial court erred by submitting a certain jury instruction.  We affirm. 

I.   Background

According
to the State’s evidence, on April 29, 2005, appellant, Antonio Lopez, and Artemio
Lopez were at the shop owned by Gilberto Garcia, their employer.  Gilberto
instructed these men to drive to Omar Garza’s apartment to retrieve a big-screen
television.  Gilberto also instructed appellant to speak with Omar regarding
property he allegedly stole from Gilberto.  Antonio testified that Gilberto
told appellant “to talk to [Omar] nicely and not to harm him, just talk to him
nicely and tell him to return the gold and to return the weapon.”  Appellant,
Antonio, and Artemio took one of Gilberto’s trucks to Omar’s apartment.  While
enroute, appellant expressed he “was going to ask [Omar] to return the guns and
the jewelry . . . he stole from Gilberto.”  Appellant further stated, “Don’t
worry about it.  I’m just going to talk to this guy.  Let me do the talking.”  

When appellant,
Antonio, and Artemio arrived at Omar’s apartment, Noel Lopez and a man named Luis
were already there and helped move the television into Gilberto’s truck.  According
to Noel, when he and Luis arrived, Omar allowed them to enter his apartment and
then left.  

After
the television was loaded, Omar returned in his SUV.  He approached the men and
“saluted everybody.”  Appellant met Omar and began talking to him.  Noel
testified that appellant put his hand on Omar in a friendly manner.  Appellant
told Omar “he knew that he got the guns and the gold.”  Omar then pushed appellant
and pulled out a small, black automatic handgun.  Antonio tried to take the
gun, but Omar was too quick and cocked the gun.  Antonio ran to his truck and
heard a gunshot.  After opening the door to the truck, he heard a second
gunshot.  Artemio and appellant entered the truck, and the men drove away. 
Following the first gunshot, Noel and Luis drove away.    

Once in
the truck, appellant became upset and “freaked out.”  He stated, “I had to
[shoot] him because he pulled out a gun,” and “He made me do it.  I mean, it could
have been anybody else.”  Later that night, the men met with Gilberto and
relayed what had occurred.  

            The police
were contacted after a family discovered Omar’s body lying in the parking lot. 
Officers found a Glock 9-millimeter handgun near Omar’s body.  The Glock was
loaded with Remington 9-millimeter ammunition.  Two casings from Federal
9-millimeter bullets were found nearby.  According to Homicide Sergeant Craig Clopton,
the lead investigator, the casings did not come from the Glock.  The medical
examiner testified that Omar had a gunshot wound to the upper chest and a fatal
gunshot wound to the head.  He explained that the head wound was caused by a firearm
held from “2 to 3 inches” to “2 to 3 feet” from Omar, and the bullet path
through Omar’s head was back to front, left to right.  The chest wound was a
“contact gunshot wound,” meaning the muzzle of the gun was held against Omar’s skin
when the gun was fired.  The medical examiner was unable to determine what type
of gun was used.

After
some difficulty locating appellant, he was arrested and charged with murder.  At
trial, the State introduced several recorded phone conversations between appellant
and his brother and other unidentified persons in which appellant asked the
other person to have “G” or “Gilbert” (apparently referring to Gilberto) swear
in an affidavit that he neither knows appellant nor sent him to Omar’s apartment
complex.  During these conversations, appellant also explained that to prevail
on self-defense, he would have to be charged with possession of a “pistol.” 
Following trial, the jury convicted appellant.  

II.   Jury Charge Error

We begin
with appellant’s second issue, in which he contends the trial court erred in
submitting an instruction to the jury pursuant to subsection 9.31(b)(5) of the
Penal Code.  See Tex. Penal Code Ann. § 9.31(b)(5) (Vernon Supp. 2009).  When
reviewing charge errors, we first determine whether there was error in the
charge.  Barrios v. State, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). 
If error existed, we then determine whether harm occurred.  See id.

The
relevant portion of the charge was submitted as follows:

[T]he use
of force by a defendant against another is not justified if the defendant
sought an explanation from or discussion with the other person concerning the
defendant’s differences with the other person while the defendant was carrying
a weapon in violation of the law.

A person commits an offense if he intentionally, knowingly, or
recklessly, carries on or about his person a handgun.

“Handgun” means any firearm that is designed, made, or adapted to be
fired with one hand.

A charge
limiting a defendant’s right to self-defense is properly given when (1) self-defense
is an issue, (2) there are facts in evidence showing that the defendant sought
an explanation from or discussion with the victim concerning the defendant’s
differences with the victim, and (3) the defendant was unlawfully carrying a
weapon.  See Tex. Penal Code Ann. § 9.31(b)(5)(A); see also Lee v.
State, 259 S.W.3d 785, 789 (Tex. App.—Houston [1st Dist.] 2007, pet.
ref’d).  When a defensive issue is raised by the evidence and a charge on the
issue is properly requested, the issue must be submitted to the jury.  Muniz
v. State, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993).  

            There was
evidence Gilberto instructed appellant to confront Omar about items he had allegedly
stolen from Gilberto.  Appellant approached Omar and told him “[I know] that
[you] got the guns and the gold.”  Appellant argues this evidence does not
support a subsection 9.31(b)(5) instruction because he sought an explanation from
Omar concerning differences between Gilberto and Omar, not between appellant
and Omar.

            The term
“differences” is not defined in the statute.[1] 
Under the canons of statutory construction, we are to construe a statute
according to its plain language.  Edwards v. State, 273 S.W.3d 919,
921 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  In determining the plain meaning of the language of a
statute, “[w]ords and phrases shall be read in context
and construed according to the rules of grammar and common usage.” Tex. Gov’t
Code Ann. § 311.011(a) (Vernon 2005).  The plain meaning of “differences” is a
“disagreement of opinion,” or “an instance of disagreement or a point upon
which there is disagreement.”  Webster’s Third Int’l Dictionary 629 (1993)
(third definition of “difference”).  

We have
found one case in which the State utilized subsection 9.31(b)(5) to limit a self-defense
theory where a person sought out the victim to discuss the victim’s differences
with a third person.[2] 
In Davis v. State, the defendant recruited three assailants to retrieve money
from the victim that had been stolen from the defendant.  276 S.W.3d 491, 494
(Tex. App.—Waco 2008, pet. ref’d).  The defendant drove the assailants to the
victim’s home and supplied them with handguns.  Id.  The assailants
broke into the victim’s home and demanded the money.  Id.  The victim began
shooting, and one of the assailants returned gunfire killing the victim.  Id. 
At trial, the defendant was denied a self-defense instruction.  Id.
at 498.  The court held, “[A]lthough [the
defendant] argues that entry into the trailer was for purposes other than a
discussion of differences, [i.e., they were supposed to retrieve the
stolen money,] the evidence establishes as a matter of law that the assailants
sought interaction with [the victim] over the stolen money while the assailants
were illegally carrying handguns.”  Id.  Therefore, the defendant was
not entitled to a self-defense instruction.  Id. at 499; see also Williams
v. State, 35 S.W.3d 783, 786 (Tex. App.—Beaumont 2001, pet.
ref’d) ([I]f the evidence is undisputed that force was not justified as a
matter of law because of section 9.31(b)(5), then a self-defense instruction is
barred.”).[3]

            Omar allegedly possessed weapons and
jewelry belonging to Gilberto; thus, there was disagreement regarding right to
possession.  Appellant sought to discuss this disagreement with Omar.  Hence,
we reject appellant’s argument that he had no “differences” with Omar. 

Appellant
also argues there was no evidence that he was carrying a weapon because the
record supported the State’s contention that the gun found at the scene
belonged to Omar and, while some evidence indicates two guns were at the scene,
no witness testified appellant possessed a weapon.  However, appellant’s
admission that he shot Omar, coupled with the discovery of bullet casings that
did not come from the gun found at the scene, supported an inference appellant
was carrying and used a gun during his confrontation with Omar.

In sum,
the trial court did not err by submitting a subsection 9.31(b)(5) instruction. 
Accordingly, we overrule appellant’s second issue.      

III.   Legal and Factual Sufficiency

We next
consider appellant’s first issue in which he contends the evidence is legally
and factually insufficient to support the jury’s finding that appellant acted
with the requisite intent to commit murder and rejection of his self-defense
claim.  

The
initial burden to produce evidence supporting self-defense rests with the defendant.  Zuliani v. State,
97 S.W.3d 589, 594 (Tex. Crim. App. 2003).  Once evidence is produced, the
burden shifts to the State to disprove the defense beyond a reasonable doubt.  Id. 
This burden of persuasion is not one that requires the
production of evidence, but requires only that the State prove its case beyond
a reasonable doubt.  Id.  When a jury finds the defendant guilty, there
is an implicit finding against self-defense.  Id.

In a legal-sufficiency review, we consider
all of the evidence in the light most favorable to the verdict and decide
whether a rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt.  Young v. State, 14 S.W.3d 748, 753
(Tex. Crim. App. 2000).  When reviewing a legal-sufficiency challenge on the issue of self-defense, a reviewing court views the evidence in the light
most favorable to the verdict to see if any rational trier of fact could have
found (1) the essential elements of murder beyond a reasonable doubt, and (2)
against appellant on the self-defense
issue beyond a reasonable doubt.  See Saxton v. State, 804 S.W.2d 910,
914 (Tex. Crim. App. 1991).

In
examining a factual-sufficiency challenge, we review all the evidence in a
neutral light and set aside the verdict only if (1) the evidence is so weak
that the verdict “seems clearly wrong or manifestly unjust” or (2) the verdict
is “against the great weight and preponderance of the evidence.”  See Marshall
v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006) (quoting Watson v.
State, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006)).  Although we may
substitute our judgment for the jury’s when considering credibility and weight
determinations, we may do so only to a very limited degree and must still afford
due deference to the jury’s determinations.  See id. (quoting Watson,
204 S.W.3d at 415, 417).  In a factual-sufficiency review of the rejection of a self-defense
claim, we view “all of the evidence in a neutral light
and [ask] whether the State’s evidence taken alone is too weak to support the
finding and whether the proof of guilt, although adequate if taken alone, is
against the great weight and preponderance of the evidence.”  Zuliani,
97 S.W.3d at 595.

Several
witnesses testified that, moments after the shooting, appellant admitted he
shot Omar.  Further, Omar sustained a contact gunshot wound to the chest and
was shot in the back of the head at close range.  We conclude this evidence
supported a finding that appellant intentionally or knowingly caused the death
of Omar or intended to cause serious bodily injury and intentionally committed
an act clearly dangerous to human life that caused the death of Omar.  See
Tex. Penal Code Ann. § 19.02(b)(1)–(2) (Vernon 2003) (describing the elements
of murder).  Hence, this case turns on whether there is legally and factually
sufficient evidence supporting the jury’s rejection of appellant’s self-defense
theory.  

As
discussed supra, the jury was instructed that self-defense is not
justified if (1) appellant sought an explanation from or discussion with Omar
concerning his differences with Omar (2) while illegally carrying a handgun.  See
id. § 9.31(b)(5)(A).  It is undisputed that appellant approached Omar and
broached the subject of Gilberto’s stolen property.  We previously explained
why this evidence supported the first prong of subsection 9.31(b)(5).  Thus, we
must determine whether the evidence supports the contention that appellant was illegally
carrying a handgun.

The
State presented no testimony referring to the gun used by appellant as a
“handgun.”  However, such fact may be determined from circumstantial evidence. 
See Pizzini v. State, 981 S.W.2d 367, 368–69 (Tex. App.—San
Antonio 1998, pet. ref’d).  Two casings from Federal 9-millimeter bullets were
found near Omar’s body; these casings did not match the bullets found in the
9-millimeter Glock handgun.  This evidence supported an inference that two
firearms were present during the altercation.  Appellant admitted to others
that he shot Omar, and testimony that Omar drew a gun, as opposed to two
guns, supports an inference that appellant used his own gun.  Eyewitnesses
testified they did not see appellant with a gun, supporting an inference that
the firearm carried by appellant was small enough to be concealed on his
person.  The medical examiner testified that he could not determine what type
of gun fired the bullets that struck Omar.  However, he testified that the
contact gunshot wound to Omar’s chest was “consistent . . . with a pistol
actually being held to [Omar’s] chest and then fired.”  Finally, appellant was
recorded on the telephone stating, “If I take it to trial, . . . I’m gonna beat
it on a self-defense case, right?  . . . If I beat it on a self-defense, I
still, alright, I still gotta be charged with a pistol.  You know.  And then
they can charge me aggravated [with a pistol], because I shot somebody.”  Based
on this evidence, the jury could have reasonably inferred that appellant was
carrying and used a handgun against Omar.[4] 
We further note that no evidence suggested appellant used a non-handgun firearm.

After viewing all the evidence in the
light most favorable to the verdict, we conclude a rational trier of fact could
have found beyond a reasonable doubt that appellant committed the essential
elements of murder and was not justified in using deadly force.  Viewing the
evidence in a neutral light, we conclude that the evidence taken alone is not too
weak to support these findings, and proof of guilt is not against the great
weight and preponderance of the evidence.  Accordingly, we hold that the
evidence is legally and factually sufficient to support the jury’s implied
finding against appellant’s self-defense theory and that appellant acted with
the requisite intent.  We overrule appellant’s first issue.

            We affirm the
judgment of the trial court.

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

Panel consists of Chief Justice
Hedges and Justices Seymore and Sullivan.

Publish
— Tex. R. App. P. 47.2(b).

 









[1] We acknowledge that without definition, “differences”
between the victim and the defendant claiming self-defense is subject to overly-broad
application; it can refer to a disagreement as serious as murder-for-hire gone
badly or as trivial as which NFL team is the best.  





[2] The State refers to an unpublished opinion in which
the Dallas Court of Appeals held that a defendant sought to discuss his
differences with the victim because the victim had harassed the defendant’s
wife and she told the defendant to “do something.”  Casares v. State,
No. 05-02-01394, 2003 WL 22332374, at *3 (Tex. App.—Dallas Oct. 14, 2003) (mem.
op., not designated for publication), aff’d 2005 WL 77049 (Tex. Crim.
App. 2005) (mem. op., not designated for publication).  However, in affirming
the Dallas Court of Appeals’s judgment, the Court of Criminal Appeals explained
that the evidence shows that “before this incident, there had been a degree of
antagonism between the [defendant and the victim].”  Casares, 2005 WL
77049, at *3.  Thus,  Casares is distinguishable from the present case,
where the only evidence relative to appellant’s and Omar’s prior relationship
was that they did not know each other. 





[3] In the present case, the State did not contend at the
charge conference that the evidence conclusively established that deadly force
was not justified because of subsection 9.31(b)(5).





[4] Evidence appellant shot Omar with a gun that was
concealed on his person supported an inference that the gun was small, but a finding
that the gun was a handgun based on nothing more would have been speculative.  See
Hooper v. State, 214 S.W.3d 9, 15–16 (Tex. Crim. App. 2007) (explaining
that mere speculation cannot support a finding beyond a reasonable doubt). 
Additionally, the medical examiner’s statement that the contact gunshot wound
was consistent with a pistol having been held against Omar’s chest did not rule
out other types of guns and thus did not alone support a handgun finding. 
However, these circumstances taken together with appellant’s acknowledgment
that a claim of self-defense entailed his being charged with possession of a pistol
moved the jury’s handgun finding beyond conjecture into the realm of reasonable
inference.  See Pizzini, 981 S.W.2d at 369 (“[I]f the State
proved the use of a pistol, the jury could reasonably infer the use of a
handgun.”).