

# IN THE
# TENTH COURT OF APPEALS

## No. 10-09-00289-CR

**BENNIE CHARLES SMITH,**

                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                        **Appellee**

From the 85th District Court
Brazos County, Texas
Trial Court No. 08-05244-CRF-85

## MEMORANDUM  OPINION

A jury found Bennie Charles Smith guilty of murder and assessed his punishment, enhanced by a prior felony conviction, at sixty years' imprisonment and a $10,000 fine.  This appeal ensued.  We will affirm.

### *BATSON* CHALLENGE

In his first issue, Smith contends that the trial court erred in overruling his *Batson* objection to the State's use of a peremptory strike against prospective juror No. 11.

The exclusion of a venire-member based on race violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. U.S. CONST. amend. XIV; *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). *Batson* provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race. *Snyder v. Louisiana*, 552 U.S. 472, 476, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008). First, the defendant must make a *prima facie* showing that a peremptory challenge has been exercised on the basis of race. *Id.*; *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008). Second, once the *prima facie* showing has been made, the burden of production shifts to the State to articulate a race-neutral reason for its strike. *Snyder*, 552 U.S. at 476, 128 S.Ct. at 1207; *Watkins*, 245 S.W.3d at 447. Third, if the State tenders a race-neutral explanation, the trial court must then decide whether the defendant has proved purposeful racial discrimination. *Snyder*, 552 U.S. at 476, 128 S.Ct. at 1207; *Watkins*, 245 S.W.3d at 447.

Because the trial court conducted a *Batson* hearing, we must presume that Smith made a satisfactory *prima facie* case of purposeful discrimination. *See Watkins*, 245 S.W.3d at 447. The second step of the process does not demand an explanation that is persuasive, or even plausible. *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). The issue is the facial validity of the prosecutor's explanation. *Id.* Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Id.*

It is not until the third step that the persuasiveness of the justification tendered for the strike becomes relevant. *Id.* "At that stage, implausible or fantastic justifications

may (and probably will) be found to be pretexts for purposeful discrimination." *Id.* In evaluating the genuineness of the State's proffered race-neutral reasons, we may consider: (1) whether the reason given is related to the facts of the case; (2) whether the State meaningfully questioned the challenged venire member; (3) whether persons with the same or similar characteristics as the challenged venire member were not struck; (4) whether there was disparate examination of the members of the venire; and (5) whether an explanation was based upon a group bias although the specific trait is not shown to apply to the challenged juror. *Williams v. State*, 804 S.W.2d 95, 105-06 (Tex. Crim. App. 1991). The trial court's finding that peremptory strikes were not racially motivated will be upheld on appeal if the finding is not "clearly erroneous" when viewed in the light most favorable to that ruling. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004).

After the challenges for cause were agreed or ruled upon, No. 11 was the only African-American member of the venire within the strike zone. The State used a peremptory strike to remove No. 11 from the venire. Smith made a *Batson* challenge, objecting that the State had struck No. 11 on the basis of race. The trial court found that Smith had made a *prima facie* showing that a peremptory challenge had been exercised on the basis of race and asked the State to provide its race-neutral reasons for the strike. The State replied:

> The specific reason as to [No. 11] was when I asked questions about the criminal justice system and things about the criminal justice system that weren't fair, he spoke about people being wrongfully convicted. I responded, "Yeah, we've heard about that up in Dallas." And then he responded specifically that it was because the prosecutors were not

putting on all the evidence.  I'm aware of those cases and the coverage on that, and it's not about prosecutorial misconduct.  It's about misidentification by the witnesses.  I think his remark specifically took a position contrary to prosecution and wasn't factually based.  So I felt like he would be contrary to prosecutors, suspicious that we would be withholding information.  That's the primary reason we struck him.

Secondary reason is because he's a corrections officer; and, quite to the contrary, correction officers are not viewed by the prosecution as being law enforcement officers.  Corrections is a different situation.  Learned that specifically when I was in Huntsville and talked to prosecutors there who try cases with correction officers.  They told me be very careful about corrections officers because their time is spent working with inmates, correcting inmates, listening to inmates talk about how they've been framed; and they are not -- they don't line up with law enforcement.  That was the secondary reason.

But clearly the primary reason, Your Honor, was because of his comments that prosecution withheld information and that was the problem with the criminal justice system.

Smith did not cross-examine the prosecutor or offer any other evidence to rebut the State's race-neutral explanations.  The trial court found that the State had provided race-neutral reasons for striking No. 11 and denied Smith's challenge.

During voir dire, the following exchange took place between the prosecutor and No. 11:

[Prosecutor]:  Could I ask you:  How do you feel about the criminal justice system?

[No. 11]:  It's not perfect.  There's instances where people that are convicted shouldn't have been convicted.

[Prosecutor]:  We've read that, haven't we?  In Dallas, Texas, there was a series of what?  20, 25 cases.  How do you suspect that works?

[No. 11]:  People just not doing the work to present all the evidence.

[Prosecutor]: Perhaps the people that are presenting the evidence have not been precise enough to present all that information? Okay.

And, as a juror -- how would you respond to that if you were a juror?

[No. 11]: If they don't present all the evidence -- I mean, they didn't prove their case.

[Prosecutor]: Right. So if the State has to prove somebody's guilty of the crime – if they don't prove that beyond a reasonable doubt, as a juror you have an obligation; right?

[No. 11]: Yes, sir.

Smith argues in response to the State's first proffered race-neutral explanation that, contrary to the State's assertion, No. 11 did not state that wrongful convictions were being secured through prosecutorial misconduct; rather, the "clear thrust of his answers was that wrongful convictions were occurring because lawyers at trial were failing to present 'all the evidence' and failing to 'prove their case.'" Smith further states that, considered in context, No. 11's answers actually reflected condemnation of defense lawyers (not prosecutors) for failing to present "all the evidence" in an effort to "prove their case" and avoid a wrongful conviction.

The State responds that the prosecutor specifically referenced the State and its duty to present evidence to support a finding of guilt at the end of the exchange, and No. 11 did not correct the prosecutor's statement and add "defense lawyers," nor did he correct any wrong impression left by the prosecutor's statement; thus, No. 11's statement could not be taken as a condemnation of defense lawyers for failing to present "all the evidence." We agree. When viewed in the light most favorable to the

trial court's ruling, the exchange indicates that No. 11 was skeptical not just of defense lawyers but of the criminal justice system, including prosecutors.

In response to the State's second proffered race-neutral explanation, Smith argues that the voir dire record fails to contain any questions by the State to No. 11 about the purported group bias of corrections officers and whether the bias actually applied to No. 11. *See Emerson v. State*, 851 S.W.2d 269, 274 (Tex. Crim. App. 1993) (explaining that occupation-based, group bias should not be applied to prospective juror without inquiring whether bias applies specifically to venireperson). We disagree with Smith. The State explained that it was concerned about allowing a correctional officer on the jury "because their time is spent working with inmates, correcting inmates, listening to inmates talk about how they've been framed; and they are not -- they don't line up with law enforcement." No. 11's statements during the State's exchange with him indicated that the group bias applied to him. When No. 11 was first asked how he felt about the criminal justice system, he immediately replied, "It's not perfect. There's instances where people that are convicted shouldn't have been convicted."

Given the record before us, we cannot conclude that the trial court's denial of Smith's *Batson* objection was clearly erroneous. We overrule Smith's first issue.

## CHARGE ERROR

In his second issue, Smith contends that the trial court "committed jury charge error resulting in egregious harm" when it allowed the case to be submitted to the jury on a theory of "party liability" when the indictment did not include such an allegation.

Smith acknowledges that the Court of Criminal Appeals has repeatedly held that a trial court may charge the jury on the law of parties even though there is no such allegation in the indictment. *See, e.g.*, *Pitts v. State*, 569 S.W.2d 898, 899-900 (Tex. Crim. App. 1978) (when evidence supports a charge on the law of parties, the court may charge on the law of parties even though there is no such allegation in the indictment); *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002) (reiterating that "it is well-settled that the law of parties need not be pled in the indictment"). Nonetheless, Smith urges us to overrule this line of cases.[1] We lack authority to do so. *See Davis v. State*, 276 S.W.3d 491, 500 (Tex. App.—Waco 2008, pet. ref'd). Smith's second issue is overruled.

## JUDGMENT

In his third issue, Smith contends that the judgment should be reformed to properly reflect his plea of "true" to the enhancement paragraph and the jury's finding of "true" to the enhancement paragraph. The State agrees that the judgment should be so reformed. The Rules of Appellate Procedure expressly authorize us to modify the judgment of the trial court. *See* TEX. R. APP. P. 43.2(b). Accordingly, we sustain Smith's

---

[1] Smith specifically asserts that:

(1) *Pitts* . . . was incorrectly decided; (2) Section 7.01, as interpreted by *Pitts*, effectively violates the state statutory and constitutional rights to an indictment in a felony case and the right to full and fair notice of the offense charged under Article I, Section 10 of the Texas Constitution, Article I, Section 19 of the Texas Constitution, and the Fifth and Fourteenth Amendments to the Constitution of the United States; (3) following *Pitts* and Section 7.01(c) violates the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States (as well as Article I, Sections 10 and 19 of the Texas Constitution)[;] and (4) allowing the State to adduce evidence designed at securing a conviction on party liability, and authorizing the jury to convict on a theory of party liability where the indictment is silent as to party liability constitutes a constructive amendment of the indictment and a fatal variance by enlarging the indictment.

third issue and modify the judgment to reflect Smith's plea of "true" to the enhancement paragraph and the jury's finding of "true" to the enhancement paragraph.

As modified, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed as modified
Opinion delivered and filed September 21, 2011
Do not publish
[CRPM]