**Billy Ross SIMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–89–00597–CR, 05–89–00598–CR.**

Court of Appeals of Texas,
Dallas.

March 13, 1991.

Rehearing Denied April 26, 1991.

620

John H. Hagler, Dallas, for appellant.

Teresa Tolle, Asst. Dist. Atty., Dallas, for appellee.

Before ENOCH, C.J., and ONION[1] and CARVER[2], JJ.

## OPINION

ENOCH, Chief Justice.

Billy Ross Sims appeals his two convictions for murder. Sims pleaded guilty to both offenses, and the court assessed punishment at two life sentences pursuant to a plea bargain. In his pro se appeal, Sims claims his guilty pleas were not entered voluntarily and knowingly because he was denied the effective assistance of counsel. In addition, Sims claims the evidence is insufficient to support his convictions and raises other procedural and constitutional challenges. After a thorough review of the record, including all pre-trial and post-trial hearings, as well as all of Sims's submissions to this Court, the trial court, and the Court of Criminal Appeals, we affirm the convictions.

## FACTS

On December 1, 1988, Sims went to the day-care center his ex-wife utilized. Sims's daughter was in the custody of his ex-wife, and he had been denied visitation rights. After waiting for his ex-wife to arrive, Sims approached the car in which his ex-wife arrived and shot her and a male companion multiple times. In exchange for the State's agreement to dismiss a capital murder charge and thus avoid the possibility of a death sentence, Sims waived his right to a jury trial and pleaded guilty to each offense.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ In his pro se brief, and his amendment to that brief, Sims raises ten separate points of error alleging he was denied the effective assistance of counsel. Each point separately raises specific instances in which Sims claims his attorney's representation was deficient. Under this claim, Sims must first show that counsel's representation fell below an objective standard of reasonableness and, secondly, that there is a reasonable probability, a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would be different had counsel's assistance at trial been effective. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex.Crim.App.1986).

### A. Change of Venue/Motion for Recusal

Sims claims that trial counsel failed to file a motion for a change of venue and a motion to recuse the trial judge, as Sims requested. This was required, Sims asserts, because: (1) the adverse publicity regarding his case prevented him from receiving a fair trial; (2) a combination of influential persons in the community was aligned against him which denied him due process; and (3) the judge supposedly made comments to the press which demonstrated bias against Sims.

■ Due process provides for a change of venue when a defendant *demonstrates* that he cannot obtain an impartial jury or a fair trial where venue lies. *Henley v. State*, 576 S.W.2d 66, 69 (Tex.Crim. App.1978). Simply because a criminal case is publicized in the media does not give rise to a prima facie claim of prejudice which entitles a defendant to a change of venue. *Beets v. State*, 767 S.W.2d 711, 743 (Tex. Crim.App.1987), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989). An

---

1. The Honorable John F. Onion, Jr., Presiding Judge, Retired, Court of Criminal Appeals, sitting by assignment.

2. The Honorable Spencer Carver, Justice, Retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

appellate court has the duty to make an independent evaluation of the circumstances surrounding the trial. *Henley*, 576 S.W.2d at 75. Sims had waived his right to a jury trial, and presents no evidence to support his claim of prejudice or conspiracy. Nor did he present any evidence at trial despite the trial judge's direct questions to Sims, asking Sims if he had any objection to the trial taking place. There is no support in the record that counsel's failure to present a motion for change of venue rendered his assistance ineffective.

Likewise, the record does not support Sims's claim of bias on the part of the judge. The record shows that at a pretrial hearing, Sims claimed to have read a newspaper article in which the judge allegedly made comments to the media regarding his case. Based upon questioning by the judge, Sims was unable to produce the article, or information regarding its publication. Other than Sims's bare assertions concerning the alleged article, the record does not show that any such article existed. Failure to present these motions, therefore, would not be an omission which supports a claim that Sims's trial counsel was ineffective.

### B. Failure to Investigate

Sims next argues that trial counsel was ineffective because he failed to pursue and present evidence and testimony, thus depriving Sims of a substantial defense. *See Beasley v. United States*, 491 F.2d 687, 696 (6th Cir.1974). Sims claims that he was not given the opportunity to present his version of the facts at the scene of the crime, or of the background of his relationship with his ex-wife which led to the events of December 1st. In his supplemental brief, he further alleges that a newspaper article which the trial judge mentioned contained a defensive theory he was prevented from presenting at trial. He also contends that the trial court committed error by giving consideration to facts outside the record concerning this alleged defense.

▬ Regarding the newspaper article, the record is devoid of any evidence that the article had any effect on the trial court or, in fact, contained any viable defense which could have affected the outcome of his trial. The newspaper article Sims refers to is mentioned in the same colloquy between Sims and the trial judge involving the article Sims claimed showed bias. As with the first article, Sims fails to support his allegation by demonstrating what information was presented in the article. This is fatal to this portion of his claim that trial counsel's assistance was ineffective or that the trial court considered facts outside the record. Further, we note that the standard in reviewing a claim of prejudicial publicity does not require total ignorance of the facts and issues. *Beets*, 767 S.W.2d at 743.

### C. Failure to Present Testimony

Sims's principal complaint regarding the effectiveness of counsel hinges on the failure to call those witnesses whose testimony would provide background evidence concerning Sims's relationship with his ex-wife, or to provide him the opportunity to fully present his version of the events surrounding the day of the murders. In several duplicitous points, Sims claims that this evidence would constitute a defense to his actions.

Recognizing that Sims pleaded guilty to these offenses based upon a plea bargain, we are unable to glean whether these points are limited to failure to call witnesses at the punishment phase of the trial or if Sims is complaining that he was forced to plead guilty because of the refusal by his trial counsel to call these witnesses at the trial of the guilt/not guilty phase. Without resolving this question, we will address Sims's points as presented.

▬ First, we conclude that Sims apparently confuses motive with defense. He seems to postulate that evidence as to why he shot and killed his ex-wife and her companion would somehow mitigate his offense. Motive is not a necessary element to sustain a conviction for murder. *Garcia v. State*, 495 S.W.2d 257, 259 (Tex.Crim. App.1973); *Lerma v. State*, 632 S.W.2d 893, 895 (Tex.App.—Corpus Christi 1982, pet. ref'd). Second, Sims seems to believe that evidence of his wife's infidelity and the

details of his custody battle would create a defense to murder, or at least reduce the offense to voluntary manslaughter. *See* TEX.PENAL CODE ANN. § 19.04 (Vernon 1989). However, sudden passion that arises from previous provocation will not qualify to reduce murder to voluntary manslaughter. *Jones v. State*, 687 S.W.2d 425, 428 (Tex.App.—Dallas 1985, pet. ref'd). Finally, the record affirmatively shows that Sims *was* allowed to testify at trial before the court accepted his guilty pleas. He was questioned by defense counsel, who elicited the information regarding the ex-wife's infidelity and the details of the custody battle. In addition, Sims was questioned at length by the trial judge. At the punishment phase, a letter written by Sims outlining his background and his feelings about the case was read into the record. Many of Sims's requested witnesses testified at that time. The record does not lead us to the conclusion that counsel was ineffective in protecting Sims's interests by failing to make the court aware of Sims's "defenses."

 In a related matter, Sims claims he was denied the opportunity to present what appears to be a self-defense argument based on the fact his ex-wife's companion was armed. However, Sims testified that he did not know the companion was even in the car until he got up to the car. He also testified that he was watching the companion while he was shooting his wife. Sims then shot the companion before his weapon was even exhibited. On these facts, no self-defense issue was raised. Therefore, failure to urge it is not ineffective assistance.

### D. Improper Consolidation/Double Jeopardy

Sims complains that his trial counsel was ineffective because he allowed the two murder cases to be tried together. The trial judge extensively questioned Sims before accepting the guilty pleas. On this issue the record shows:

> THE COURT: I don't know if I need to ask this or not, but I will: Do you have any objection to the Court hearing both of these cases today at the same time?
>
> THE DEFENDANT: I thought that's what we were doing.
>
> THE COURT: We are doing that, but do you have any objection to it?
>
> THE DEFENDANT: No.

 There is no provision in the law prohibiting the consolidation of prosecutions; consolidation may occur if the defendant consents, as Sims did here. *Guia v. State*, 723 S.W.2d 763, 767 (Tex.App.—Dallas 1986, pet. ref'd). Sims claims that he consented to consolidation because the option of severing these offenses into separate trials was denied to him by his counsel's ineffectiveness. As previously indicated, Sims entered into a plea bargain. In exchange for his guilty pleas and the agreed consolidation, the State agreed to drop the capital murder charge pending against Sims. This strategic decision removed the possibility that Sims could be sentenced to death. On the facts of this case, the consolidation does not constitute ineffective assistance of counsel.

 Sims also claims that this consolidation sought two convictions at one time and because the two offenses arose out of a single transaction, violates the double jeopardy clauses of the federal and Texas constitutions. The guarantees under the federal and state constitutions provide protection against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980). Sims was charged by indictment with the murder of his ex-wife, and by felony affidavit and information with the murder of her companion. These are two separate and distinct offenses to which Sims pleaded guilty, and for which he received separate and distinct punishments. Consequently, no double jeopardy issue is presented.

### E. Failure to Impeach

 Sims urges that trial counsel's failure to impeach or to object to testimony

from a psychiatrist, called as a defense witness during the punishment phase, regarding Sims's future dangerousness denied him effective assistance of counsel. Much of this witness's testimony was favorable to Sims; we cannot say that failure to attempt impeachment was not sound trial strategy. *Newsome v. State*, 703 S.W.2d 750 (Tex.App.—Houston [14th Dist.] 1985, no pet.). Even if we were to agree that an objection was proper to some portions of the testimony, Sims's constitutional right to counsel does not mean errorless counsel. *Holland v. State*, 761 S.W.2d 307, 320 (Tex. Crim.App.1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989). Additionally, we note that in a trial before the court, it is presumed that the judge ignores improper testimony; consequently, error, if any, was harmless. *Ozack v. State*, 646 S.W.2d 941, 943 (Tex. Crim.App.1983).

### F. Prior Convictions/Unadjudicated Offenses

■ Sims complains that trial counsel was ineffective because he failed to prevent the introduction into evidence of his convictions for prior offenses. He then claims that these convictions, as well as two unadjudicated offenses, were used to improperly enhance his sentence. The references Sims makes to unadjudicated offenses appear in one instance during the guilty/not guilty phase when the judge first calls these two murder cases for trial. One of the offenses is the pending capital murder charge which the State agreed to drop in exchange for Sims's guilty pleas. The second involves a motion to adjudicate to guilt an offense for which Sims was placed on probation. The record does not reflect whether this offense involved Sims's removing his daughter from the state without authority during the custody struggle or two apparently unrelated theft offenses. The judge indicated in the record he has mentioned them only to allow the

record to reflect all pending cases involving Sims. The next reference to prior offenses is made by Sims himself in his testimony during the guilty/not guilty portion of his trial. Sims referred to efforts to convince the authorities that his conviction and the award of custody to his ex-wife were the result of her perjury. The final reference to any previous conviction is a reference by the trial judge, prior to pronouncing sentence, to a previous court appearance by Sims at which the judge cautioned him not to take the law into his own hands. There is no evidence which indicates that these references had any effect whatsoever on any decision by the trial judge. The judge, in fact, stated that he was only concerned with the two murder cases presently before him. Sims fails to demonstrate any error which could have prejudiced him in any way.[3]

■ We return to Sims's overall claim of ineffective assistance of counsel. Having focused on each of Sims's claimed of acts and omissions, we must also address the matter from an overall perspective. Counsel's conduct is to be judged by the totality of representation, not merely by a review of isolated incidents. *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim.App. 1987); *Butler v. State*, 716 S.W.2d 48, 54 (Tex.Crim.App.1986). However, allegations of ineffective assistance must be firmly founded to be sustained. *Holland*, 761 S.W.2d at 320.

■ There are some cases where no defense can logically be asserted, where a defendant pleads guilty to avoid the possibility of a more severe punishment. In these instances, counsel is under no duty to urge his client to plead not guilty. Where no viable defense can be ascertained, and if pleading not guilty would be harmful instead of beneficial, an attorney should so advise his client. *Ex parte Perry*, 455 S.W.2d 214, 216 (Tex.Crim.App.1970). From the record before us, we can identify

---

**3.** We recognize that a different test applies when reviewing a claim of ineffective assistance of counsel at the punishment phase of trial. *Ex parte Walker*, 777 S.W.2d 427, 430–31 (Tex.Crim. App.1989); *Ex parte Cruz*, 739 S.W.2d 53, 58

(Tex.Crim.App.1987). However, even an application of this standard judges effectiveness from the totality of representation and, therefore, our review and disposition of Sims's allegations is unchanged.

this as just such a case. The overwhelming evidence, from Sims's judicial confessions and testimony to the testimony of the eyewitnesses, leads to an inescapable conclusion of guilt. The facts of this case indicate that pleading guilty, and accepting a plea bargain which dismissed a capital murder charge, avoided a likely death sentence. Urging Sims to accept the plea bargain was competent and effective advice from counsel. Based upon the foregoing, we overrule Sims's points of error one through three, five through seven, nine, ten, and twelve through sixteen.

## DEFENDANT'S APPEARANCE AT TRIAL

■ In his fourth point of error, Sims contends that requiring him to appear at trial wearing jail clothing and shackles prevented him from obtaining a fair trial and effectively participating in his defense. Nothing in the record shows that Sims was forced to appear in court so attired and bound, or if so, at what phase of the proceedings, or that he objected. Also, we note again that the proceedings complained of by Sims were before the court, not a jury. Sims directs us only to cases which deal with a defendant losing his presumption of innocence by appearing before a *jury* dressed in this manner. *See Hernandez v. Beto*, 443 F.2d 634 (5th Cir.), *cert. denied*, 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971); *Ephraim v. State*, 471 S.W.2d 798 (Tex.Crim.App.1971). Even if *Hernandez* applied to defendants tried before the court, it does not allow a defendant to remain silent, go to trial, and then claim error because of his attire. *Hernandez*, 443 F.2d at 637. Finally, we note that if, in fact, Sims were required to appear in prison garb and shackles, such a requirement is within the discretion of the trial judge. *Thompson v. State*, 514 S.W.2d 275, 277 (Tex.Crim.App.1974). We overrule Sims's fourth point of error.

## INSUFFICIENCY OF THE EVIDENCE/INVOLUNTARINESS OF PLEA

In his remaining two points, which we address together, Sims claims that the evidence is insufficient to support his convictions. He also asserts that his guilty pleas were made involuntarily because his attorney represented he would have the opportunity to advise the court of the circumstances surrounding the murders.

■ Sims testified at the guilty/not guilty phase of his trial:

Q.: Now, at this point in time do you freely admit that you did shoot both of these two people; is that correct?

A.: Yes, sir, I caused their deaths.

This evidence alone is sufficient to support Sims's convictions. Also, the testimony of several eyewitnesses at the punishment phase, had it been necessary to present it to a jury, was overwhelming and sufficient to support the capital murder charge the State dropped in exchange for Sims's pleas. It has long been the law of this state that an appellate court may look at evidence adduced at both stages of the trial in determining whether the evidence is sufficient to support a conviction. *DeGarmo v. State*, 691 S.W.2d 657, 661 (Tex. Crim.App.), *cert. denied*, 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985). In addition, the trial court could properly find Sims guilty of both offenses on his guilty pleas coupled with his judicial confessions. *See* TEX.CODE CRIM.PROC.ANN. art. 1.15 (Vernon 1981). The record shows that the trial judge properly admonished Sims as to the effects of his pleas and his having signed the judicial confessions. *See* TEX.CODE CRIM.PROC.ANN. art. 26.13 (Vernon 1981).

■ Under these points, Sims reargues that the State failed to show a lack of sudden passion which would be a necessary element of murder. As previously mentioned, Sims attempts to utilize the background of his relationship with his ex-wife to justify his acts, and this former provocation fails to reduce his offenses to voluntary manslaughter. *See* TEX.PENAL CODE ANN. § 19.04 (Vernon 1989). Only where the evidence demonstrates this passion arose at the time of the offense must the State negate sudden passion to support a conviction for murder. *See Ruiz v. State*, 753 S.W.2d 681, 683 (Tex.Crim.App.1988);

*Cobarrubio v. State,* 675 S.W.2d 749, 751 (Tex.Crim.App.1983). The testimony of the eyewitnesses shows that Sims waited at the scene for approximately an hour prior to the victims' arrival. Going to the scene armed, lying in wait for his ex-wife, and shooting her and her companion upon their arrival lends no support to Sims's claim that a lesser included offense should have been charged.

■ Sims also alleges the State failed to prove mental capacity at the time of the offenses. Under the law of this state, a person is presumed to be sane and to have sufficient judgment to be held accountable for his acts unless the contrary is established. The State has no burden to prove sanity. *Madrid v. State,* 595 S.W.2d 106, 111 (Tex.Crim.App. [Panel Op.] 1979), *cert. denied,* 449 U.S. 848, 101 S.Ct. 134, 66 L.Ed.2d 58 (1980); *Bonner v. State,* 520 S.W.2d 901, 906 n. 2 (Tex.Crim.App.1975). In any event, all the evidence supports a finding of capacity. The trial court ordered psychiatric examinations to determine Sims's capacity at the time of the offenses as well as his competency to stand trial. At the request of Sims's sister, another test was administered to determine if Sims suffered from Huntington's Disease. The psychiatrist who examined Sims testified that Sims was sane at the time of the offenses and competent to stand trial. Sims's attorney also testified Sims was competent to stand trial. The test for Huntington's Disease was inconclusive.

■ Finally, Sims claims that because his attorney misrepresented to him that he would be allowed to advise the court regarding the circumstances surrounding the murders, his pleas were not voluntarily and knowingly made. Sims cites cases for the proposition that if a guilty plea is induced by promises which are unfulfilled, the pleas are not voluntarily made. *See Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Sims misinterprets these cases, which refer only to promises made by the prosecution. It is only when the State fails to carry out its side of the

plea bargain that the unfulfilled promises make the plea involuntary. *Ex parte Austin,* 746 S.W.2d 226, 227 (Tex.Crim.App. 1988).

■ Again, Sims's major concern appears to be that he was not allowed to present his version of events. As mentioned above, the record reflects he did testify about his previous relationship with his ex-wife which apparently precipitated the events of December 1, 1988. The information he sought to present to the court is in the record before us, including all the handwritten data he presented at the hearing on his motion for new trial. From the record before us, it is clear that the trial judge went to great lengths to ensure Sims understood the consequences of his pleas. Both the trial judge and defense counsel ensured Sims was satisfied that he understood all the issues and the ramifications of his actions, and the State honored its promises under the plea bargain. We overrule points of error eight and eleven.

Having overruled all Sims's points of error, we affirm the judgments of the trial court.