ACCEPTED
01-14-00121-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/15/2015 12:32:03 PM
CHRISTOPHER PRINE
CLERK

## No. 01-14-00121-CR

In the
## Court of Appeals
For the
## First District of Texas
At Houston

——————◆——————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

12/15/2015 12:32:03 PM

CHRISTOPHER A. PRINE
Clerk

## No. 1268863
In the 178th District Court
Of Harris County, Texas

——————◆——————

## PAUL BRIONES
*Appellant*
V.
## THE STATE OF TEXAS
*Appellee*

——————◆——————

STATE'S APPELLATE BRIEF

——————◆——————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
Harris County Criminal Justice Center
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone: 713.274.5826
stelter_kimberly@dao.hctx.net
State Bar Number: 19141400

**CONNIE SPENCE**
**MARITZA ANTU**
Assistant District Attorneys
Harris County, Texas

ORAL ARGUMENT NOT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

State believes that the matters raised by the appellant are well-settled, and that the briefs in this case adequately apprise this Court of the issues and the law. Therefore, the State does not request oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

*Counsel for the State:*

**Devon Anderson** — District Attorney of Harris County

**Kimberly Aperauch Stelter** — Assistant District Attorney on appeal

**Connie Spence, Maritza Antu** — Assistant District Attorneys at trial

*Appellant and counsel:*

**Paul Briones** — Appellant

**Daucie Schindler** — Counsel on appeal

**John Floyd, Christopher Carlson** — Defense counsel at trial

*Trial Judge:*

**Honorable David Mendoza** — Judge Presiding

i

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ...................................................i

IDENTIFICATION OF THE PARTIES ....................................................................i

TABLE OF CONTENTS................................................................................... ii

INDEX OF AUTHORITIES.............................................................................. iii

STATEMENT OF THE CASE.............................................................................1

STATEMENT OF FACTS ..................................................................................1

SUMMARY OF THE ARGUMENT ....................................................................5

REPLY TO APPELLANT'S FIRST, SECOND
AND THIRD ISSUES PRESENTED...................................................................5

    **Standard of Review on Motion for New Trial**

    **Standard of Review on Ineffective Assistance of Counsel**

    **Defense Counsel's Strategy was Based on Extensive
    Investigation and Preparation for Trial**

        **1) Decision not to Call Multiple Witnesses for the Defense**

        **2) Decision not to Impeach**

        **3) Decision not to Call Other Witnesses to Present
          Mitigation Testimony at Punishment**

    **Conclusion**

PRAYER..........................................................................................................17

CERTIFICATE OF SERVICE ...........................................................................18

CERTIFICATE OF COMPLIANCE...................................................................19

# INDEX OF AUTHORITIES

**CASES**

*Bone v. State,*
   77 S.W.3d 828 (Tex. Crim. App. 2002) .......................................................................... 8

*Damian v. State,*
   881 S.W.2d 102 (Tex. App.—
   Houston [1st Dist.] 1994, pet. ref'd) .......................................................................... 13

*Davis v. State,*
   276 S.W.3d 491 (Tex. App.–
   Waco 2008, pet. ref'd) .............................................................................................. 13

*Ex parte Ewing,*
   570 S.W.2d 941 (Tex. Crim. App. 1978) ...................................................................... 14

*Ex Parte Imoudu,*
   284 S.W.3d 886 (Tex. Crim. App. 2009) ........................................................................ 7

*Ex parte Varelas,*
   45 S.W.3d 627 (Tex. Crim. App. 2001) .......................................................................... 8

*Hale v. State,*
   140 S.W.3d 381 (Tex. App.—
   Fort Worth 2004, pet. ref'd .......................................................................................... 10

*Harris v. State,*
   No. 01–88–00991–CR, 1990 WL 39468, at *4 (Tex. App.–
   Houston [1st Dist.] pet. ref'd) (not designated for publication) ...................... 14

*Messer v. State,*
   757 S.W.2d 820 (Tex. App.—
   Houston [1st Dist.] 1988, pet. ref'd) ............................................................................ 7

*Mitchell v. State,*
   68 S.W.3d 640 (Tex. Crim. App. 2002) .......................................................................... 7

*Reyes v. State,*
   849 S.W.2d 812 (Tex. Crim. App. 1993) ........................................................................ 6

*Richardson v. State,*
   921 S.W.2d 359 (Tex. App. –
   Houston [1st Dist.] 1996, no pet.) .................................................................................. 7

*Shanklin v. State,*
   190 S.W.3d 154 (Tex. App.—
   Houston [1st Dist.] 2005, pet. dism'd)................................................................ 15

*Sims v. State,*
   807 S.W.2d 618 (Tex. App.–
   Dallas 1991, pet. ref'd) ........................................................................................ 14

*State v. Gonzalez,*
   855 S.W.2d 692 (Tex. Crim. App. 1993)............................................................. 6

*Strickland v. Washington,*
   466 U.S. 668 (1984)..........................................................................................7, 16

*Thompson v.* State,
   9 S.W.3d 808 (Tex. Crim. App. 1999).................................................................. 8

*Weisinger v. State,*
   775 S.W.2d 424 (Tex. App.—
   Houston [14th Dist.] 1989, pet. ref'd)................................................................ 16

*Williams v. State,*
   301 S.W.3d 675 (Tex. Crim. App. 2009).............................................................. 8

## STATUTES

Tex. Code Crim. Proc. art. 57.02(h) (West 2010) ............................................................. 1

## RULES

Tex. R. App. P. 38.2(a)(1)(A) ........................................................................................... i

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged by indictment with both indecency with a child and aggravated sexual assault of a child (RR4 71-72). He entered a plea of not guilty to both, and the two cases were tried together (CR 71-72). The jury found him not guilty of aggravated sexual assault, but guilty of the indecency charge, and assessed his punishment at 20 years in the Institutional Division of the Texas Department of Criminal Justice (RR9 8, RR10 190-191). Appellant filed a motion for new trial, which, after a hearing, was denied (RR17 4-16). Appellant filed timely notice of appeal, and the court certified his right to appeal (CR 67-68).

—————————◆—————————

## STATEMENT OF FACTS

Lisa[1] was ten years old in the summer of 2004 (RR6 27). At this age she and her older sister, Kim, spent a lot of time over at their Aunt Joanna's house (RR6 23-24, 32). Lisa liked go to Aunt Joanna's as there were a lot of things to do there (RR6 25). There were also cousins to play with. Joanna

---

[1] In order to protect their privacy, the State will refer to the complainant by the pseudonym "Lisa," and her sister by the name "Kim." *See* TEX. CODE CRIM. PROC. art. 57.03(a) (West 2014).

had three children of her own; Ashley, who was a few years older than Kim, Johnathan, who was Lisa's age, and Destinee, who was three years younger than Lisa (RR6 28, 26). Appellant, Aunt Joanna's husband and Lisa's uncle by marriage, was a police officer, but he wasn't home very often and when he was, he was usually sleeping due to his work schedule (RR6 30, 31). When he was awake and playing with the kids, Lisa felt that she and Destinee were his favorites (RR6 27, 34).

One evening that summer, Lisa and Kim were sleeping over at their Aunt Joanna's house. That night they set up a bed on the living room floor and watched a movie with Destinee (RR6 42, 44). Kim and Destinee both fell asleep during the movie, but Lisa was still awake when appellant got home late from work (RR6 45-46).

Lisa was not supposed to be up that late, so she pretended to be asleep when appellant came into the living room, turned off the TV, and adjusted a blanket covering the three girls (RR6 50, 53). After moving about the house, appellant came back over to Lisa's side of the makeshift bed and laid down (RR6 54-55). He removed the blanket from Lisa and pulled down her shorts and underwear (RR6 58). Appellant then placed his hand on Lisa's vagina and moved his fingers (RR6 60). This made Lisa feel very uncomfortable, so she started to stretch as if she were waking up (RR6 62). In response,

2

appellant pulled Lisa's shorts and panties back up, placed the blanket back over her, and walked away to the kitchen, where he started making a sandwich (RR6 63, 64).

Not much later appellant came back and resumed where he had left off, uncovering Lisa and pulling down her short and panties. This time, however, he also put his mouth on Lisa's vagina (RR6 66-67). Lisa once again moved, turning her body toward her cousin, and again appellant covered her up and left (RR6 69).

Appellant returned to Lisa's side yet again that evening, this time sexually assaulting her by putting his mouth and hand on her vagina (RR6 72). Lisa again responded by turning on her side, away from appellant (RR6 75). Appellant covered Lisa up and then went to his bedroom (RR6 74). Lisa, meanwhile, moved to sleep between her cousin and her sister (RR6 74).

Appellant came out to the living room one more time that evening but, perhaps thwarted by Lisa's new sleeping position, just stood by the fireplace and stared at Lisa before grabbing his sandwich and returning to his bedroom (RR6 75). Lisa didn't tell anyone what had happened that night, but in the morning she packed up her belongings and told her aunt she wanted to go home (RR6 77).

3

Lisa was scared and confused as to what had happened that evening, and didn't tell anybody until three years later, in the summer of 2007 (RR4 92, RR6 83). When she did tell, it was to her Aunt Katherine, and then she only told her that appellant "touched me." (RR4 149-150). She also made her aunt promise not to tell her parents (RR4 94). Her aunt kept that promise, but insisted that Lisa tell her parents (RR4 99).

Lisa finally did so in January of 2008, with her aunt Katherine present (RR4 110 RR5 83-84, 88, RR 6 91). She gave only the "bare minimum" in details about that night, however, and begged her parents not to go to the police (RR6 91-92).

Lisa's parents did take her to a psychologist at that time, but Lisa refused to talk to her, as she felt she could not tell a complete stranger what had happened (RR4 175-176, RR6 91). Lisa's mother and father finally acquiesced in not reporting appellant to the police, but they also made sure that their children did not spend the night at appellant's house ever again (RR4 177, RR6 98-99).

Then, in 2010, Lisa's father, while picking up clothes in Lisa's bedroom, came across some papers where Lisa had written about the incident with appellant and how it was still affecting her (RR4 186, RR6 95, 104). At the time Lisa was feeling very depressed and sad, and was

4

considering harming herself (RR6 97). Lisa's parent were alarmed by what Lisa had written, and decided they needed to take some action, so they finally reported the crime to the police (RR4 188, 193-194, RR5 125).

———————————◆———————————

## SUMMARY OF THE ARGUMENT

The trial court did not abuse it's discretion in denying appellant's motion for new trial. The evidence developed at the motion for new trial hearing supported the trial court's findings that trial counsel rendered effective assistance of counsel. In particular, the decision not to call certain witnesses at the guilt/innocence and punishment stages of trial, as well as the decision not to impeach the complaining witness with minor inconsistences in her testimony from the previous trial, were legitimate decisions based on sound trial strategy, and did not render trial counsel's representation ineffective.

———————————◆———————————

## REPLY TO APPELLANT'S FIRST, SECOND
## AND THIRD ISSUES PRESENTED

Appellant raises three issues on appeal, all concerning the trial court's decision to deny his motion for new trial. Appellant contends that the trial

court should have granted him a new trial on the basis that his trial counsel was ineffective. Appellant presents three reasons why he believes his counsel was ineffective: 1) his decision not to call certain witnesses for the defense, 2) his decision not to impeach the complaining witness with certain prior inconsistent statements, and 3) his decision not to present additional mitigating evidence at the punishment stage of trial.

The trial court considered trial counsel's testimony on each of these three issues at the lengthy three day hearing on appellant's motion for new trial (RR14-RR16). At the conclusion of the hearing, the trial court made specific findings of facts and conclusions of law that trial counsel's decisions were strategic ones that had a plausible basis, as set out in the record, and that trial counsel rendered effective assistance of counsel (RR17 11). The evidence supports the trial court's ruling.

**Standard of Review on Motion for New Trial**

Ineffective assistance of counsel may be raised in a motion for new trial. *State v. Gonzalez,* 855 S.W.2d 692, 694 (Tex. Crim. App. 1993); *Reyes v. State,* 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). Because the decision on a motion for new trial rests within the sound discretion of the trial court, the standard of review on appeal is whether the trial court abused its discretion. In the absence of an abuse of discretion, appellate courts are not justified in

6

reversing the judgment. *Gonzalez,* 855 S.W.2d at 696*. Richardson v. State*, 921 S.W.2d 359, 361 (Tex. App. –Houston [1st Dist.]1996, no pet.). In considering a motion for new trial, the trial court possesses broad discretion in assessing the credibility of witnesses and in weighing the evidence to determine whether a different result would occur upon retrial. *Messer v. State,* 757 S.W.2d 820, 827–828 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

## **Standard of Review on Ineffective Assistance of Counsel**

To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668 (1984); *Ex Parte Imoudu*, 284 S.W.3d 886, 869 (Tex. Crim. App. 2009). A reasonable probability is one sufficient to undermine confidence in the outcome of a case. *Strickland,* 466 U.S. at 687; *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). It is not enough for a defendant to show that the errors, if any, had some conceivable effect on the outcome of the proceeding. *Strickland,* 466 U.S. at 687; *Ex parte Varelas,* 45 S.W.3d 627, 629 (Tex. Crim. App. 2001). Rather, this stringent burden requires that he point to objective

7

facts in the record to support lack of confidence in the conviction, i.e. proof of prejudice. *Bone v. State,* 77 S.W.3d 828, 837 (Tex. Crim. App. 2002). Failure to make either one of these required showings defeats an ineffectiveness claim. *See Williams v. State,* 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

In reviewing counsel's performance, appellate courts should look at the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that the attorney's performance falls within the wide range of reasonable professional assistance or trial strategy. *Thompson v.* State, 9 S.W.3d 808 at 813 (Tex. Crim. App. 1999). A claim of ineffective assistance must be firmly supported in the record. *Id*.

**<u>Defense Counsel's Strategy was Based on Extensive Investigation and Preparation for Trial</u>**

The trial court heard extensive testimony at the hearing on appellant's motion for new trial, all if it from appellant's trial counsel, John Floyd. Appellant had hired Floyd after the performance by his previous trial attorney, Abraham Fisch, resulted in appellant's conviction for both injury to

a child and aggravated sexual assault (RR16-164, 215).[2]  Floyd testified at the motion for new trial hearing regarding his trial preparation, his strategy for what evidence to present, what cross-examination to conduct, and what defensive theory he decided to pursue (RR14 –RR16).

Floyd explained that he was a board certified criminal defense lawyer with close to 20 years of criminal law experience (RR13 15-16).  Floyd had tried 40 to 50 trials, including several sexual crimes (RR13 16).  Appellant had been a client of his for approximately a year and a half by the time of trial (RR13 17, 21).  During that time, Floyd conducted extensive investigation and preparation for appellant's case, enlisting the assistance of two other attorneys, a paralegal, and an investigative service (See State's MNT Exhibit No. 1, RR16 168).  The investigative firm hired by Floyd conducted at least 23 audio interviews of potential witnesses.  Among those interviewed were appellant, Joanna Briones, Ashley Rodriguez, Vielka Castro and her family, Christina Gonzales, Jonathan Briones, Destinee Briones,

---

[2] The jury in this first trial assessed punishment at a 10 year probated sentence for the injury to a child case and 7 years in the Institutional Division of the Texas Department of Criminal Justice for the aggravated sexual assault charge (RR16-164). Fisch filed a motion for new trial, which was granted on the basis that the jury received an exhibit which had not been introduced into evidence (CR 21-24) With Floyd representing him, appellant was actually acquitted of the aggravated sexual assault charges, but was sentenced to twenty years on the indecency with a child case (RR- RR9 8, RR10 190-191).  Presumably unhappy with this result, appellant returned to his first attorney, Abraham Fisch, who filed a motion for new trial on the basis of ineffective assistance of counsel (RR16 160).

Katrina and Victor Pena, Kayla Darilek, the pastor of the church the family attended, and the jury foreman from appellant's previous trial (State's MNT Exhibit No. 1). That last interview proved quite useful, as Floyd was able to determine what witnesses the prior jury had found to be unhelpful, or even harmful to the defense (RR16 191, 228). After considering multiple defensive theories, Floyd decided that the best way to proceed was to limit presentation of evidence and focus on the fact that the State had not proven its case beyond a reasonable doubt (RR16 191-192).

### **Decision not to Call Multiple Witnesses for the Defense**

Appellant argues that his trial counsel was ineffective for failing to call certain witnesses, particularly Joanna Briones, appellant's wife, Ashley Rodriguez, appellant's step-daughter, and Johnathan and Destinee Briones, appellant's children.

Contrary to appellant's assertions, none of these individuals were witnesses to the actual offense, and could not contradict Lisa as to anything that happened the night in question, partly because nobody knew when that night in question was. *Hale v. State,* 140 S.W.3d 381 (Tex. App.—Fort Worth 2004, pet. ref'd) (not ineffective assistance when potential witnesses had no personal information concerning accusations). In addition, defense counsel had learned that the jurors from the previous trial found appellant's family

10

members to be ineffectual and, because of the closeness of their relationship with appellant, unbelievable witnesses (RR13 67). Most importantly, defense counsel was concerned about "extraneous kinds of personal character issues that I was afraid might be opened, no matter how well intentioned and well coached the witnesses were" (RR13 68).

Trial Court was legitimately concerned that if these witnesses testified, their testimony could prove harmful (RR16-206). For example, Floyd was aware that the State had in its file an offense report where Joanna Briones called the police on appellant at a time very close to when the offense occurred and that this offense did not show appellant in a positive light (RR16 207). There was also evidence that Ashley Rodriguez had made an outcry regarding appellant inappropriately touching her, and that Joanna was aware of that allegation (RR16 208).

Appellant also criticizes defense counsel for not calling Lisa's treating psychologist who could testify about Lisa's drug use and poor relationship with her father. Appellant, however, fails to mention that this witness was retired and living outside the jurisdiction of the court (RR16 174-175). In addition, defense counsel had talked to this witness; she was very hostile to the defense, believed the sexual abuse had occurred, and would have

11

indicated that Lisa's behaviors were likely the result of this abuse (RR16 178-180).

Defense counsel also gave legitimate strategic reasons for not calling Officer Munez, the officer who took the initial report from Lisa's parents, and Dr. Piece, an expert hired to examine the medical records for evidence of sexual abuse. Counsel explained that he avoided calling Munoz because the officer clearly wanted to help the state, and was willing to say that any inaccuracies in his initial report could have been due to his mistake in taking down the information (RR13 198). Dr. Pierce also did not appear to be a favorable witness, as he indicated to trial counsel that there was evidence in Lisa's medical records which would lead him to believe that sexual abuse had occurred (RR113 132).

In short, the trial court did not abuse it's discretion in determining that trial counsel had a legitimate trial strategy for not calling any witnesses at the guilt/innocence stage of trial. Instead of presenting all these witnesses, the defense decided the best trial strategy was to argue that the State did not make its case.[3]  When in counsel's reasonable judgment, a potential witness

_____

[3] This strategy was apparent in trial counsel's closing argument, where he explained to the jury that "we chose to shut it down because the State didn't make their case." (RR8 25).

may be as dangerous as he or she might be helpful, it is not ineffective assistance of counsel not to call the witness to the stand. *Damian v. State,* 881 S.W.2d 102, 110 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

**Decision not to Impeach**

Appellant also contends that trial counsel was ineffective for failing to challenge Lisa's credibility. Floyd explained that he extensively cross-examined Lisa, but that she did not make any major contradictions to her previous statements or testimony (RR16-194). Floyd and his staff had reviewed the transcript from the previous trial and were ready to address any inconsistences, but he did not feel it was effective to impeach Lisa with a transcript from the previous trial for small matters which did not go to the heart of the case (RR16 193-194). Instead, defense counsel was trying to build a rapport with the jury and his own credibility (RR16 193). The trial court, in denying appellant' motion for new trial, found that this decision not to impeach witnesses on minor discrepancies was due to trial strategy, and that such strategy had a plausible basis in the record (RR17 13).

The trial court ruled correctly on this issue. The decision not to impeach, particularly on minor matters, can be part of a reasonable strategy. *See Davis v. State,* 276 S.W.3d 491, 502 (Tex. App.–Waco 2008, pet. ref'd) (recognizing counsel's decision not to impeach witnesses may be "sound

13

trial strategy.") The fact that appellant was convicted (just was he was in the first trial), does not mean that this strategy was deficient. *See Ex parte Ewing,* 570 S.W.2d 941, 944 (Tex. Crim. App. 1978) ("The fact that another attorney may have pursued a different tactical course of trial is insufficient to support a finding of ineffective assistance of counsel."). *Sims v. State,* 807 S.W.2d 618, 624 (Tex. App.–Dallas 1991, pet. ref'd) ("[W]e cannot say that failure to attempt impeachment was not sound trial strategy."); *Harris v. State,* No. 01–88–00991–CR, 1990 WL 39468, at *4 (Tex. App.–Houston [1st Dist.] Apr. 5, 1990, pet. ref'd) (not designated for publication) (holding that failure to bring up inconsistent testimony and impeach witness may be sound trial strategy, because attempting to impeach may have been "more harmful" than beneficial to appellant). *Davis v. State,* 276 S.W.3d 491, 502 (Tex. App. – Waco, pet. ref'd) (finding that the decision not to impeach witnesses on deals they made with the State sound trial strategy).

### Decision not to Call Other Witnesses to Present Mitigation Testimony at Punishment

Finally, defense counsel presented very viable reasons for why he did not call additional witnesses other than appellant's sister, Oralia Schmidt, at the punishment stage of trial. Defense counsel explained that he had access to the State's file, and was able to determine that the State was prepared to

14

attack the credibility of several potential witnesses, most notably appellant's wife and stepdaughter (RR10 160). The State also had evidence of other bad conduct that it was just waiting for a chance to introduce. Ms. Schmidt, however, was not aware of most of this conduct, so the prosecutor was not able to question her about it (RR10 161).

For example, appellant suggests that defense counsel could have called appellant's previous employers, as he worked as a bailiff in several courts. Defense counsel, however, explained that the letters of commendation regarding appellant's work history as a bailiff were invalidated by more recent letters reprimanding appellant for his work history, leaving defense counsel to believe that it was better to avoid delving into appellant's work performance in detail (RR16 196-197).

As mentioned earlier, the decision whether to present witnesses is largely a matter of trial strategy. *Shanklin v. State,* 190 S.W.3d 154, 164 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd). "Moreover, an attorney's decision not to present particular witnesses at the punishment stage may be a strategically sound decision if the attorney bases it on a determination that the testimony of the witnesses may be harmful, rather than helpful, to the defendant." *Id.* (citing *Weisinger v. State,* 775 S.W.2d 424, 427 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd)). The trial court correctly found that

15

trial counsel made a strategic decision not to call more than one character witnesses at the punishment stage of trial and was not ineffective (RR17 12-13).[4]

**Conclusion**

In short, defense counsel established through his testimony at the motion for new trial hearing that he thoroughly prepared for this trial. The trial court found that each decision trial counsel made was a strategic one calculated to help appellant's case. Trial counsel's trial strategy, which resulted in appellant's acquittal in the more serious offense with which was charged, was to present minimal evidence, not antagonize the jury, and prevent damaging testimony from coming in. The trial court did not abuse its discretion in finding that these strategic decisions were reasonable and that trial counsel rendered effective assistance of counsel. *See Strickland,* 466 U.S. at 689. Appellant's three issues are without merit, and the judgement should be affirmed.

————————◆————————

---

[4] The trial court also found that appellant failed to establish that there was a reasonable probability that, but for trial counsel's alleged errors, the results of the proceedings would have been different in either the guilt/innocence or punishment phases (RR17 15). In other words, appellant failed to prove either prong of the *Strickland* ineffective assistance of counsel test.

## PRAYER

The State respectfully requests that this Court affirm the judgment of the trial court.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/*Kimberly Aperauch Stelter*

**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
State Bar Number: 19141400
stelter_kimberly@dao.hctx.net

17

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument is being served by EFileTXCourts.Gov e-filer to the following email address

Daucie Schindler
Assistant Public Defender
1201 Franklin, 13th Floor
Houston, Texas  77002
Daucie.Schindler@pdo.hctx.net

/s/*Kimberly Aperauch Stelter*

**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 274-5826
State Bar Number: 19141400
stelter_kimberly@dao.hctx.net

18

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of **4,374** words, based upon the representation provided by the word processing program that was used to create the document.

/s/*Kimberly Aperauch Stelter*

**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002-1923
(713) 274-5826
TBC No. 19141400
stelter_kimberly@dao.hctx.net